MARGARET B. EDSON, as Executrix of the Will of MARMONT B. EDSON, Deceased, Appellant, *v.* JOHN E. PARSONS et. al., as Executors of the Will of MARY A. EDSON, Deceased, and Individually, et al., Respondents, Impleaded with JARVIS. B. EDSON.

1. APPEAL — QUESTION OF LAW — UNDISPUTED FACTS. A pure question of law is not presented by the determination, affirmed at the General Term, that there was not a mutual agreement to execute mutual wills, although the facts were not disputed, where the evidence as to the making of any agreement was not direct, but consisted in the facts relating to the execution of the wills and to the lives and habits of the testatrices and their relations to the property, and the facts were not of such a character as to compel the inference of an agreement.

2. WILL — AGREEMENT FOR MUTUAL WILLS — EVIDENCE OF. A mutual agreement to execute mutual wills is not shown by the fact that persons make similar wills with cross-provisions in favor of the survivor.

3. IRREVOCABILITY OF WILL — EVIDENCE TO ESTABLISH. To establish an agreement for mutual wills and defeat the right to revoke a will, there must be full and satisfactory proof of the agreement, which cannot be supplied by presumptions.

4. RIGHT OF RESIDUARY LEGATEE TO ENFORCE CONTRACT AS TO. MUTUAL WILLS. A residuary legatee in mutual wills made under a contract between the testators has a standing in equity to enforce the contract against the legatees and legal representatives of the testator who survived the other and then made another will.

5. FORMER JUDGMENT UPON ANOTHER WILL. A judgment establishing a secret trust under a will in evasion of a statute, and thereby giving plaintiff an additional share of the estate, is not a bar to another action by such plaintiff to subject the estate in the hands of the executors to the provisions of a former will executed under a contract as a mutual will.

*Edson* v. *Parsons*, 85 Hun, 263, affirmed.

(Argued March 21, 1898; decided April 19, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered July 2, 1895, affirming a judgment in favor of defendants entered upon a decision of the court dismissing the complaint upon the merits on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph H. Choate* and *Treadwell Cleveland* for appellant. The uncontradicted evidence and the language of the wills clearly prove an agreement to execute mutual wills enforceable in equity. (*Parsell* v. *Stryker*, 41 N. Y. 480; *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; *Dufour* v. *Pereira*, 1 Dick. 419; *Ex parte Day*, 1 Bradf. 476; 1 Jarman on Wills [5th ed.], 18; 2 Hargrave's Jurid. Arg. 278; *Hinckley* v. *Simonsen*, 4 Ves. 160; *Carmichael* v. *Carmichael*, 72 Mich. 76.) After the death of Susan M. Edson, the probate of her will, and the acceptance by Mary A. Edson of the provisions thereof, the agreement contained in the wills became a binding contract upon Mary A. Edson which a court of equity will enforce. (*Dufour* v. *Pereira*, 1 Dick. 419; *Lord Walpole* v. *Lord Orford*, 3 Ves. Jr. 402; 1 Jarman on Wills [6th Am. ed.], 27, 30; Redf. on Wills [4th Am. ed.], 183; 2 Story's Eq. Juris. [13th ed.] § 785; Schouler on Wills [2d ed.], § 454; *Bolman* v. *Overall*, 80 Ala. 451; *Carmichael* v. *Carmichael*, 72 Mich. 76; *Cawley's Estate*, 136 Penn. St. 628.) The particular contract thus established is one which a court of equity will specifically enforce. (*Lord Walpole* v. *Lord Orford*, 3 Ves. Jr. 402; *Brady* v. *Smith*, 28 N. Y. Supp. 776; *Cawley's Estate*, 136 Penn. St. 628; *Dufour* v. *Pereira*, 3 Ves. 418; *Shakespeare* v. *Markham*, 72 N. Y. 400; *Carmichael* v. *Carmichael*, 72 Mich. 76.) There is no force in the suggestion that such a contract is contrary to public policy. (*Bolman* v. *Overall*, 80 Ala. 451; *Schutt* v. *Miss. Soc. of M. E. Church*, 41 N. J. Eq. 115; *Brady* v. *Smith*, 28 N. Y. Supp. 776; *Cawley's Estate*, 136 Penn. St. 628; 1 Jarman on Wills [Bigelow's 5th ed.], 18; Schouler on Wills [2d ed.], § 454; *Robinson* v. *Ommaney*, L. R. [23 Ch. Div.] 285.) There can be no question as to the right of Marmont B. Edson and his legal representatives to enforce this contract. (*Amherst Col.* v. *Ritch*, 151 N. Y. 282; *Hobson* v. *Blackburn*, 1 Adams, 274; 1 Jarman on Wills [5th ed.], 18; 2 Hargrave's Jurid. Arg. 309–311; *Durnherr* v. *Rau*, 135 N. Y. 219; *Societa Italiana* v. *Sulzer*, 138 N. Y. 468; *Murphy* v. *Whitney*, 140 N. Y. 541; *Todd* v. *Weber*, 95 N. Y. 181; *Babcock* v. *Chase*, 92 Hun, 264;

*Kofka* v. *Rosicky*, 41 Neb. 328; *Rector, etc.,* v. *Teed,* 120 N. Y. 583; *Whitcomb* v. *Whitcomb,* 92 Hun, 443; *Godine* v. *Kidd,* 64 Hun, 585.)

*James C. Carter,* for charitable societies, respondents. An agreement, such as is alleged in the present case, by one of two persons to make a will disposing of his entire property in a certain manner upon no other consideration than the making, correspondingly, of a will by the other party disposing of his entire property, so that neither could change the disposition after the death of the other, would be wholly invalid as a contract. (*Gall* v. *Gall,* 19 Abb. [N. C.] 19.) Even if it be assumed that such contract to make mutual wills is enough, after the death of one, to bind the survivor, or that equitable grounds sufficient to make the agreement binding in that event had been alleged, and that this court could somehow take cognizance of the question whether the agreement was proved, the action must still fail, as the attempt to prove it was a total failure. (*McCormack* v. *Grogan,* L. R. [4 E. & I. App.] 82.)

*David B. Ogden* and *Edward M. Shepard* for executors, respondents. The only question before this court is whether the plaintiff's evidence of the mutual promise is so conclusive that the contrary finding was without evidence to support it. (Code Civ. Pro. §§ 1337, 1338; *Columbia Bank* v. *G. T. Church,* 127 N. Y. 361.) This is an action for the specific performance of an alleged contract. It must be governed, therefore, by the general rules: *First,* that the evidence of the contract must be full and satisfactory; and, *second,* that the terms of the contract must be definite and explicit. The plaintiff has failed to comply with either of these requisites. (*Sheldon* v. *Sheldon,* 11 N. Y. Supp. 477; *Marx* v. *McGlynn,* 88 N. Y. 357; *Waring* v. *Warren,* 1 Johns. 340; *Penfield* v. *Carpender,* 13 Johns. 350; *Tuttle* v. *Hunt,* 2 Cow. 436; *Weeks* v. *Lowerre,* 8 Barb. 530; *Erben* v. *Lorillard,* 19 N. Y. 299; *Stickney* v. *Billings,* 30 Hun, 304; *Matter of Kele-*

*men,* 57 Hun, 165; *Lord Walpole* v. *Lord Orford,* 3 Ves. Jr. 402; 2 Hargrave's Jurid. Arg. 76.) Even if the contract had been made out the plaintiff could not sue upon it. (*Lawrence* v. *Fox,* 20 N. Y. 268; *Garnsey* v. *Rogers,* 47 N. Y. 233; *Vrooman* v. *Turner,* 69 N. Y. 280; *Pardee* v. *Treat,* 82 N. Y. 385; *Carter* v. *Holahan,* 92 N. Y. 498; *Gates* v. *Hames,* 28 N. Y. S. R. 313; *Townsend* v. *Rackham,* 143 N. Y. 516; *Wainwright* v. *Q. C. W. Co.,* 78 Hun, 146; *Feist* v. *Schiffer,* 79 Hun, 275.)

*Julien T. Davies* and *Herbert Barry* for Domestic Foreign Missionary Society, respondent. The decision of the Supreme Court, that there was no evidence of any contract, is not reviewable by this court. (*Dunckel* v. *Dunckel,* 141 N. Y. 437; Code Civ. Pro. § 191, subd. 3.) Upon the evidence the court below properly decided that there was no adequate proof of any contract or agreement to make mutual wills, which it could specifically enforce. (*Lord Walpole* v. *Lord Orford,* 3 Ves. Jr. 402; *Shakespeare* v. *Markham,* 10 Hun, 311; 72 N. Y. 400; *Cawley's Appeal,* 136 Penn. St. 628; *Johnson's Appeal,* 114 Penn. St. 132; *Drischler* v. *Van Den Henden,* 17 J. & S. 509.) The decision of the lower courts dismissing the complaint was proper, since plaintiff did not show any capacity to sue. (*Durnherr* v. *Rau,* 135 N. Y. 219; *Townsend* v. *Rackham,* 143 N. Y. 516; *Lyth* v. *Hingston,* 14 App. Div. 11; *Amherst College* v. *Ritch,* 151 N. Y. 282.)

*R. Emmet Doherty* for Lucy Sandford et al., respondents. This is virtually an action for specific performance of a contract, and in such an action, especially one in regard to a contract as to leaving property by will, the evidence must be full, clear and convincing, and the terms of the contract must be certain and definite. (*Gall* v. *Gall,* 29 Abb. [N. C.] 19; 138 N. Y. 675; *Matter of Keep,* 17 N. Y. S. R. 812; *Hopper* v. *Reed,* 32 Daily Reg. No. 99; *Shakespeare* v. *Markham,* 10 Hun, 311; *Drischler* v. *Van Den Henden,* 17 J. & S. 509; *Lord Walpole* v. *Lord Orford,* 3 Ves. Jr. 402; *Chester* v. *Urwick,*

23 Beav. 407; *Loffus* v. *Maw*, 3 Giff. 592; *Drakeford* v. *Wilks*, 3 Atk. 539; *Cawley's Estate*, 136 Penn. St. 628; *Hill* v. *Harding*, 92 Ky. 76.) Even if the alleged contract had been proved, the plaintiff could not sue upon it. (*Vrooman* v. *Turner*, 69 N. Y. 280; *Buchanan* v. *Tilden*, 5 App. Div. 354; *Townsend* v. *Rackham*, 143 N. Y. 516; *Garnsey* v. *Rogers*, 47 N. Y. 233; *Pardee* v. *Treat*, 82 N. Y. 385, 392; *Carter* v. *Holahan*, 92 N. Y. 498; *Gates* v. *Hames*, 28 N. Y. S. R. 313; *Wainwright* v. *Q. C. W. Co.*, 78 Hun, 146; *Feist* v. *Schiffer*, 79 Hun, 275.) Susan's diary, even if there was anything in it favorable for plaintiff, is inadmissible and incompetent as evidence. (*Erben* v. *Lorillard*, 19 N. Y. 299; *Stickney* v. *Billings*, 30 Hun, 304; *Matter of Kelemen*, 57 Hun, 165; *Marx* v. *McGlynn*, 88 N. Y. 357; *Whitaker* v. *White*, 69 Hun, 258; *Sheldon* v. *Sheldon*, 11 N. Y. Supp. 477; *Dusenbury* v. *Hoadley*, 49 N. Y. S. R. 560; *Horton* v. *Wood*, 50 N. Y. S. R. 679; *Waring* v. *Warren*, 1 Johns. 340.)

*Horace L. Bronson* for Lucia G. Baker et al., respondents. The mutual or reciprocal will of Mary A. Edson is valid. (*Matter of Diez*, 50 N. Y. 88; *Wood* v. *Vandenburgh*, 6 Paige, 277; Redfield on Surr. Prac. 156, note 4; *Ex parte Day*, 1 Bradf. 476; *Ex parte McCormick*, 2 Bradf. 169.) The trust created thereby is void for indefiniteness, and the property attempted to be bequeathed thereby passed to the next of kin. (*O'Hara* v. *Dudley*, 95 N. Y. 403; *Russell* v. *Jackson*, 10 Hare, 204; *Edson* v. *Bartow*, 10 App. Div. 104.) There is no formal adjudication binding the plaintiff upon the principal issue presented upon this appeal. (*Matter of Keleman*, 126 N. Y. 73.)

GRAY, J. The plaintiff's testator brought this action for the purpose of obtaining a judgment, which should declare a will made by Mary A. Edson, deceased, in August 1884, to be valid and binding upon her estate and upon the defendants, Parsons and others; who were named as executors and lega-

tees in a will executed by her subsequently, in May 1890. The plaintiff therein having died after the commencement of the action, the same was revived in the name of the present plaintiff as his executrix. The theory of the action, as shown in the complaint, was that the will, whose provisions are sought to be made binding upon Mary Edson's estate, had been made in pursuance of a contract between her and her sister, Susan, who predeceased her; whereby each had agreed with the other to make and execute her will and to dispose thereby of her estate in a certain manner. In that disposition, the survivor was to take, absolutely, three-fourths of the estate of the one first dying and, also, the remainder of the other fourth, after exhausting certain bequests, and was then to dispose of the estate of which she should die seized and possessed, in such manner, as that all which remained, after various provisions for gifts to legatees named, should go to their only brother, this plaintiff's testator, as the residuary legatee. The complaint rests upon the basis that the two sisters had agreed to make mutual and reciprocal wills, wherein their brother was to be the ultimate residuary legatee; that that agreement was carried out by the simultaneous execution of similar wills and that, after the execution of these mutual wills, intended to remain as final testamentary dispositions, Mary, surviving Susan, had executed her other will, in May 1890, revoking her previous will and giving to trustees for her brother's use during his life only one-third of her residuary estate. The alleged mutual wills and the later will of Mary Edson are attached to the complaint and made parts of it.

It was not claimed by the appellant that there was any formally expressed contract between the sisters; or that such a contract for the making of mutual wills is evidenced except by the wills themselves and by some facts, relating to, and illustrating, their making and execution and the strong attachment, which united the sisters to their brother. It was shown through their diaries, kept at the time, that the two sisters, who were maiden ladies of the age of sixty years and upwards, for some time, were engaged together in planning their testa-

mentary dispositions and in consulting with their counsel, Mr. Parsons, with respect to them. The wills, when drawn, were executed on the same day, in the presence of the same witnesses, and were then placed in a box in the Safe Deposit Company. They were alike, in their scheme. Each first gave to the other her undivided half of the residence in New York city and of certain land in Orange county and made certain bequests to her brother and to other persons. She then gave three-fourths of all the rest of her estate to her sister, absolutely. From the remaining fourth of her residuary estate, she gave to and among her brother, the members of his family and other persons and various religious, charitable and benevolent societies and institutions, pecuniary legacies, and the remainder she gave to her sister, absolutely. She provides, then, for the event of her survival of her sister, or of her sister dying after her, but before proof of the will, and makes numerous gifts of real and personal property, specific and general, to and among certain persons and certain religious, charitable and educational societies and institutions. By the final clause, if she shall survive her sister, or if her sister shall die after her, but before proof of the will, she gives all the rest, residue and remainder of her estate to her brother, absolutely.

After the making of these wills by the sisters, and after the death of Susan Edson, in the following year, and the admission of her will to probate, Mary Edson, in May 1890, and some twenty-seven days before she died, executed a will, of which she appointed the defendants, Parsons, Bartow and Fairchild, the executors. By it she gave one-third of all the residue of her estate to her executors, in trust to apply the rents and income thereof to the use of her brother, during his life, with a power to him of appointment by will, and, in default of appointment, to his issue. She made devises and specific bequests and from the residue of her estate she made pecuniary gifts to various persons and societies. What then should remain, she gave to her executors to be divided among such incorporated, religious, benevolent and charitable socie-

ties of the city of New York, as they might appoint, with the approval of her friend, the Rev. Dr. Huntington. She provided for the case of the lapsing or failure of legacies, by giving the amount thereof absolutely to the persons named as her executors, expressing herself as satisfied that they would follow what they believed to be her wishes and imposing upon them no condition, but leaving the same to them personally, and without any limitation or restriction. Subsequently, she executed three codicils, adding to, or changing, her previous testamentary gifts, which call for no particular reference.

The facts brought out upon the trial showed that these two elderly ladies had received, each, an estate of some $500,000, in value, from a deceased brother, Tracy Edson, who had died in 1881 and who, by his will, had divided his property equally among his sisters and his brother Marmont. A strong attachment subsisted between the brothers and sisters during their lives. Tracy was a single man and lived with his sisters; but Marmont, who was married, resided with his family in Brooklyn. After Tracy's death, Mary and Susan continued to reside together in the same house, united by ties of the strongest affection and leading lives of singular uniformity of thought and action. It might be said that their lives ran in one groove and, judging from extracts from their diaries put in evidence, were so blended, that they seemed to experience the same emotions, to view occurrences with the same eyes and to be moved to the performance of common acts. Thus it was, that they spoke of and planned their testamentary dispositions together; together, visited their lawyer and, ultimately, executed, on the same day, before him and the same witnesses, wills having similar schemes for the distribution of their estates after death should separate them. There can be no doubt, but that their wills evidence a conclusion, which was reached by them after discussion and deliberation, as to the most advisable plan for the disposition of their property and we may fairly infer, from the evidence, that it was prompted by a desire, after making many charitable and benevolent gifts, to keep the surplus in the family, by giving

it to their brother, Marmont. They were, plainly, not ordinary wills; for each testatrix undertook to make a testamentary disposition contingent upon the survivorship of the other and it is in that feature that, in truth, the contention of the appellant finds its support. That is, that there was a mutual representation that, in consideration of these identical and cross provisions in the two wills, the survivor would adhere to and carry out the provisions of her will; a representation upon which, when one of them should die, it should be presumed that she had placed reliance, and because of which, therefore, a court of equity would see to it that the testamentary provision made should not fail, through a diversion of the residuary estate into other hands by a subsequent will.

But, as it seems to me, an insurmountable difficulty, assuming that the contention might dispose our minds favorably to its reception, limits the province of our review. A pivotal question of fact was presented in the trial court and was there disposed of adversely to the plaintiff. The position taken by the plaintiff was that Mary and Susan Edson had entered into a mutual agreement to execute mutual wills. The distinct and controlling issue in the case was there and the trial court found, upon the evidence, that the plaintiff had failed to prove that the wills were made pursuant to any agreement, or that they were mutual wills, and, therefore, dismissed the complaint upon the merits; holding that the property of Mary was not charged with any trust, or duty, and, at her death, passed under her subsequent will, absolutely, or as qualified by any trust provisions therein. The judgment of the trial court so reached has been affirmed at the General Term. What then is the province of this court, except to see if there was any evidence to sustain the conclusions reached by the court below? That much we are called upon to do; as the appeal is from the former General Term and before the amendments made in procedure. Of course, whether there was a question of fact is a question of law; to be answered according to the character of the evidence. If it showed a conflict; or, the facts being uncontradicted, if it was open to conflicting

inferences, in either case, there would be presented a question of fact for determination and when that determination has been affirmed at the General Term, this court would be without jurisdiction to review it. Now it was essential for the plaintiff to make out by clear proof that the two sisters had made the agreement, under which he asserted his rights to equitable relief; for, otherwise, as will be noticed hereafter, he would be in no position to claim that Mary's legatees and legal representatives under her subsequent will were bound, in a trust capacity, to apply the property received by them to the purposes of that original agreement. The argument of the appellant is, not that Mary, by such an agreement, had incapacitated herself from making another will, but that her estate and her legal representatives were bound by an antecedent obligation assumed by her; namely, a contract entered into with her sister, Susan, to the effect that, in consideration of each leaving by will to the other all of her property remaining after the deduction of certain gifts, the one surviving would make the brother, Marmont, the residuary legatee of what she should be possessed of at her death. The evidence given upon the trial was of facts, which were not disputed. It was wholly offered by the plaintiff and the defendants rested upon it, without deeming it necessary to offer any on their part. It was not direct as to the making of any agreement; but consisted in the facts relating to the execution of the wills and to the lives and habits of the testatrices and their relations to the property. But these apparent and admitted facts cannot be said to be such as presented a pure question of law; for they left it to inference whether any such contract had been made by the two sisters. The trial court might infer from the evidence that the wills were made in pursuance of, and evidenced with the surrounding circumstances, such a contract; or it might, as it did, infer that the simultaneous execution of similar wills was a coincidence, or, more correctly speaking, was merely an act in these sisters' lives, without stronger significance than to illustrate how closely bound up they were in common habits of thought

and of conduct. Conflicting inferences were furnished by the proofs upon the trial as to the fact in issue of any agreement; which were to be decided by the trial court. I know of no absolute rule of law, which impresses upon wills, similar in their cross provisions, that mutual character, by force of which the survivor's estate comes under a trust obligation. I understand that something more is needed to warrant equitable intervention and, in the absence of an express agreement, that it must be found in circumstances, which so surround the transaction as, imperatively, to compel the conclusion that the parties intended and undertook to bind themselves and their estates, irrevocably, in the event of the prior death of one.

The appellant is compelled to take the position that, her facts not having been disputed, the question became one of law, which threw open the door for a review by this court of the case as submitted to the trial court. If the question turned only upon the legal construction of the instruments, that might be so; but it was far from that. They constituted, by their terms, no mutual contract; however reciprocal their provisions might appear. Whether they were reciprocally binding depended upon the existence of an agreement, or a clear understanding, to that effect and that was, of necessity, left to inference from all the facts which the plaintiff could collate. There entered into the consideration of the question the probability, or improbability, of so mutual and far reaching a contract having been made between these sisters. Their closeness of union and mutual affection would seem to negative the idea that each proposed to give to the other upon condition and to restrict the future disposition by the survivor of her estate, in all the contingencies which might affect her in her future relations to the world about her and even to the brother, who was proposed as the residuary legatee of the survivor. These were considerations, which would contribute to the doubt upon the correctness of the plaintiff's contention. It became the delicate and responsible task of the trial judge to make that inference from the facts, which he believed, upon carefully weighing them, that they, on the whole, supported.

They did not compel, in my opinion, a different conclusion than that reached. The burden upon the plaintiff was not shifted by merely giving evidence, which was susceptible of different inferences. He had made no conclusive case; until he had given such proofs as permitted but the one inference of an agreement. Until then, the possibility of there having been no agreement whatever was not excluded. I think we are bound to hold that the facts were such as to support the finding of the trial court, that no agreement was proved, and that it is impossible for us to say that there was but a question of law upon the undisputed evidence, open to our review upon original considerations.

It will be observed that the argument for the appellant rather, in some phases, assumes the fact that these were mutual wills, in the legal acceptation of the term, and, hence, concludes that, upon the death of Susan, Mary's estate became bound by her acceptance of the provisions of Susan's will and that her legatees and legal representatives under the subsequent will were charged with a trust to apply the property passing to them as provided in the mutual will. The assumption of this fact rests, and, indeed, must rest, upon an inference drawn from the language of the wills and the circumstances disclosed by the evidence. I fully concede that there is no reason in law, nor any public policy, which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills; which, though remaining revocable upon notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations; of which equity will assume the enforcement, if attempted to be impaired by subsequent testamentary provisions on the part of the survivor. The proposition is one which may be regarded as having been accepted generally. (1 Jarman on Wills, *27; 2 Story's Eq. Jur. sec. 785; Schouler on Wills, sec. 454; *Lord Walpole's Case*, 3 Ves. Jr. 402.) A Court of Equity would, in such an event, proceed upon the ground that the survivor was bound, not merely in honor, but by his agreement and by the acceptance of the benefit, which that agreement procured for him.

In such a case, obviously, no remedy at law would be adequate to the party, in whose interest, and for whose ultimate advantage, the testamentary agreement had been entered into. Therefore, equity would perform its high function of supplying the relief, which the rules of law are not sufficiently elastic to comprehend, and recognizing the obligation, which, in conscience and in honor, rested upon the surviving party, would decree a specific performance of the testamentary agreement, by compelling those persons, into whose possession the property affected may have come, to account for and to deliver it over to the complainant, for being impressed with a trust in his favor. But, equally, would it be the duty of a Court of Equity to refuse that relief, where the agreement sought to be given effect was not certain and definite. Clearly, it should hesitate to assume the grave responsibility of implying an agreement, whose existence depends upon circumstances, inconclusive in their nature and permitting an inference either way. It is not essential to the intervention of Equity, in order to prevent the accomplishment of fraud, that an agreement should be established by direct evidence. It may be established from such facts and circumstances as will raise an implication that it was made; and may have reinforcement from the evidence of the conduct of the parties, at the time and subsequently. But, concerning as it does the statutory right of a person to dispose of his property after his death by a last will, the court should refuse to interfere ; unless the agreement, depended upon for the award of the relief demanded, has been clearly and definitely established. The law permits a person to dispose of his property at his pleasure. He may make a valid agreement binding himself to make a particular testamentary disposition of his property, if it be a reasonable one, and he may validly renounce the power to revoke his will, in the absence of fraud or deceit. Equity will enforce such an agreement, when well and fairly founded, and will not suffer him to defraud and to defeat his obligation by another will. But the court must have full and satisfactory proof of the agreement. (*Johnson* v. *Hubbell*, 10 N. J. Eq. 332.)

Mr. Justice BARRETT, in *Gall* v. *Gall* (29 Abb. [N. C.] 19), well and pertinently, remarked, in connection with the importance of maintaining the Statute of Wills in its integrity, that it was certain "that in this class of cases the ordinary rules, which govern in actions to compel the specific performance of contracts and which furnish reasonable safeguards against fraud, should be rigidly applied. These rules require the contract to be certain and definite in all its parts; that it be mutual and founded upon an adequate consideration and that it be established by the clearest and most convincing evidence." The contract there in question related to a devise to be made of the testator's property in a specific way and not to the making of mutual wills; but I think the learned justice's summing up of the principles, which should guide the court in that class of cases, apply, with equal force, to the cases where it is sought to establish the making of mutual wills. A general maxim, which Equity recognizes, is that a testator's will is ambulatory until his death. It is a disposition of property, which neither can, nor is supposed to, take effect until after death. I think it needs no further argument to show that to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof.

But the contention of the appellant goes so far as to claim that the wills on their face show an agreement and judicial support is sought for it in Lord CAMDEN's judgment in *Dufour* v. *Pereira* (1 Dick. 419); which is the subject of extended and learned comment by Mr. Hargrave in his juridical arguments. (Vol. 2, p. 277.) In that case, however, the will was in an instrument which was jointly executed by husband and wife and, while not a conclusive, it was a very material circumstance to be considered. In the case of *Lord Walpole* v. *Lord Orford*, which involved the question of whether there had been mutual wills made, which reciprocally bound Horace Lord Walpole and his great nephew, George Lord Orford, as testators, and their estates, in the testamentary disposition

then made, Lord Chancellor LOUGHBOROUGH had occasion to refer to, and to review, the decision in *Dufour* v. *Pereira;* in which case he had taken part as counsel. He said that the will, jointly executed by husband and wife in that case, was considered by the court, not as the wife's will, but as her contract with her husband for a valuable consideration, and that, when she survived and had accepted its terms, she bound herself to the conditions under which all the property was given by the husband's will. She and her husband were foreigners, acting under the idea of a foreign law that she had no separate property, and had made their mutual engagements by a mutual will. Lord LOUGHBOROUGH observed that the case was the very opposite of the one before him and he refused to be bound by it as an authority. The circumstances in *Lord Walpole's* case were so strong as to provoke the comment by the Lord Chancellor, that the fact of some agreement was to be implied and that it was to be considered as an honorable engagement on Lord Orford's part. But he said that he could " not direct the execution of an honorable engagement." " For this court," he remarked, " to execute an agreement, it is always necessary that the terms should be clear. Here it is uncertain, whether they meant it to amount to a legal obligation. There is no evidence, upon which I can obtain a clear and definite solution of that.   *   *   *   There is great uncertainty with regard to the terms and the extent of the agreement and, particularly, whether it was meant to be absolutely binding, or that it should rest upon honor." Yet the circumstances, in *Lord Walpole's* case, were those of wills contemporaneous in execution, and it was shown that the testator had said before one of the witnesses that the parties had made reciprocal limitations in their wills in favor of each other and that Lord Orford had deposited his will with Lord Walpole, his co-testator, for custody. There existed, also, reasons for the making of wills with reciprocal limitations; in that the female issue was sacrificed, in favor of collateral heirs male; in order to preserve the family estates in the name of Walpole. It is objected to the authority of

72

that case that the Lord Chancellor's discussion upon the question of mutual wills was obiter and gratuitous; inasmuch as the case was disposed of upon the case made by the bill, which was inconsistent with the relief prayed for. However that may be, it was his opinion upon such a case and has such weight as the judicial utterance and reasoning deserve and, especially, it is important as throwing light upon Lord CAMDEN's decision in *Dufour* v. *Pereira*. It is not necessary that we should absolutely depend upon it as an authority for our conclusions.

I think that the present case afforded ample support to the conclusions reached by the trial court. The wills were similarly made and, hence, showed concert of action and similarity of purpose; but not necessarily a binding agreement of such solemnity and far-reaching consequences, as the appellant claims. To argue upon the basis that they are mutual wills begs the question. That is a fact to be established by evidence, showing that such was the understanding and the deliberate agreement. The scheme was clear; but what shows, conclusively, that each sister understood that the other was irrevocably bound? Is such an inference the only one warranted by the situation and circumstances? This cannot quite be likened to that class of cases, where a devise has been made upon the faith of a promise which Equity will enforce, when founded upon a sufficient consideration; or where a fiduciary relation exists, which procures the devise to be made upon representations, without which the devisee would not have taken. The wills in question were not made, evidently, to accomplish a family settlement, but a general disposition of the estates of the testatrices. They were bound by the closest ties of blood and affection and their lives were bound up in the most intimate intercourse. In giving to the other the bulk of her estate, each yielded to the natural dictates of an unbounded affection; which entitled the other to the first consideration and to an unlimited confidence, in the use and disposition of her property. Hence, the testamentary gift was absolute and untrammeled by any limitations. The only condition of the

gift was that the other should survive the proof of the will; not without some degree of significance, in my opinion, of the intended absoluteness of the taking by the survivor. How can we say, with certainty, that each intended and understood that the other was forever bound by the disposition then made and which, undoubtedly, did seem to them at the time the better and wiser to be made? Was the surviving sister not to be free, in all the contingencies of life, with all the possible mutations in her relations to others, or in the worthiness of the destined objects of their bounty, to make such other testamentary dispositions, as might seem wise, or in better accord with her sentiments? These are most serious questions for consideration upon the plaintiff's appeal to a court of equity for relief. They had their proper place in the judicial mind, in determining upon the existence of the contract, in enforcement of which the plaintiff was asking the equitable interference of the court. Giving full effect to the equitable rule, which recognizes and enforces agreements under which mutual and reciprocal wills are made, and which lays hold of all circumstances to enable the court to carry it out, when it would be inequitable to defeat it, my conclusion is that the facts of this case were not of a character that compelled the inference of an agreement and that they supported the adverse determination made below.

I think that there is no force in the objection of the respondents that, if the agreement was proved, the plaintiff's testator was incapable of enforcing it by reason of his not being a party to it. If it existed, it was for his benefit and advantage and he had a standing in equity to enforce it against the legatees and legal representatives of the testatrix.

Nor was the plaintiff precluded from carrying on this action by reason of the relief which she obtained in a former action. (*Edson* v. *Bartow*, 154 N. Y. 199.) After the probate of this later will of Mary Edson, the plaintiff's testator commenced the present action; but, previously thereto, there had been commenced an action by the executors to obtain a construction of her will. Subsequently, and after the dismissal of

the complaint in the present action, the plaintiff's testator, as sole heir at law and next of kin, brought another action to establish a secret trust in the residuary legatees of Mary Edson's will, because of certain extrinsic facts, which showed an agreement, or promise, on their part to carry out the charitable wishes of the testatrix, in evasion of the statute; which avoids such a testamentary disposition when made within less than two months before death. The appeals in this latter action and in the executors' action were but recently disposed of by us. (154 N. Y. 199.) In the appeal in the executors' action, we disposed of the various questions brought up with reference to the construction and the validity of various provisions of the will and, upon the appeal in the action by this plaintiff's testator, we held that so far as Mr. Parsons, one of the three executors and residuary legatees, was concerned, the residuary gift to him was invalid for being affected by a secret trust, based upon his implied promise to execute the testamentary scheme of his client. As to the other two persons named as executors, Bartow and Fairchild, it was held that they were not bound by what was found to have been the implied promise of Mr. Parsons. As the result of the last-mentioned action, the situation was, that, in addition to the beneficial interest, to which the plaintiff's testator was entitled in one-third of Mary Edson's residuary estate, his executrix recovered one-third of the remainder which was given to the three persons named as executors, as residuary legatees.

I do not see how the relief obtained in the other action constituted any impediment to the appellant's proceeding with the present action. In the first, or executors', action, it was held that the persons named as executors took their legacies absolutely and without restriction; but the question of the existence of any agreement, binding Mary's estate to a disposition as made in a mutual will, was not involved. In the other action, it was sought to impress upon the legacies, by reason of extrinsic facts, an equitable trust in favor of the heir at law and next of kin of the testatrix. In this action, it was sought to subject the estate in the executors' hands to

the provisions of a former will, by reason of an agreement with the sister, Susan, leading to its execution as a mutual will, which Equity will uphold as binding and enforceable. If the agreement had been proved, the legatees and legal representatives of Mary Edson would be controlled by the decision and Equity would decree the distribution of the estate in such wise as that the plaintiff would receive what her testator was equitably entitled to.

The judgment should be affirmed, with costs.

All concur, except Parker, Ch. J., not sitting.

Judgment affirmed.