(27 Misc. Rep. 285.)

## EVERDELL et al. v. HILL et al.

(Supreme Court, Special Term, New York County. April, 1899.)

1. WILLS—AGREEMENT TO MAKE RECIPROCAL WILLS.

To prove an agreement between three sisters to make reciprocal wills to the survivor of them, who should will the whole to their nieces in equal shares, it was shown that all three had stated repeatedly to members of their family that they had made such an agreement. M., the survivor, to whom the property of the other sisters had been left, repeated it to a disinterested witness. A beneficiary under the will of M., made contrary to the agreement, testified that M. had said such an agreement was made, but that the survivor could dispose of her own estate as she liked; but, even if this were the agreement, the will violated it. All three made wills about the same time in accordance with the alleged agreement, except that M. devised a part of her estate to the person who was the beneficiary of her subsequent will, with whom she had been living, and continued to live for the remaining 16 years of her life. *Held*, that the agreement was satisfactorily established.

2. SAME—ENFORCEMENT.

An agreement between three sisters to make reciprocal wills for the benefit of their nieces can be enforced by them in equity against the legatees and representatives of the survivor, to whom the property of the other sisters had been left, and who had violated it.

3. SURROGATE'S COURT—JURISDICTION.

The surrogate court has no jurisdiction of a proceeding to enforce an agreement to make a will in a certain way, and its proceedings cannot constitute an adjudication against the right to maintain a suit in equity to enforce the agreement.

Suit by Lucie E. Everdell and others against Elizabeth Hill and Jacob F. Miller, as executrix and executor of Mary L. Everdell, deceased, and others. Decree for plaintiffs.

Jacob S. Van Wyck (E. M. Shepard, of counsel), for plaintiffs.

Cyrus C. Miller (Jacob F. Miller, of counsel), for defendants Hill and Miller.

Marshall, Moran, Williams & McVickar, for St. Luke's Hospital.

Nash & Jones, for St. Luke's Home.

SCOTT, J. This is an action to establish and enforce a mutual agreement alleged to have been entered into by three sisters respecting the disposition of their several estates. The alleged agreement is thus set forth in the complaint:

"That one Matilda Everdell, one Catherine Everdell, and one Mary L. Everdell, who were sisters, now deceased, late of the city of New York, entered into a mutual, verbal agreement with each other some time in the early part of the year 1881, or prior thereto, whereby they each with the other interchangeably agreed to make and leave last wills and testaments, by which they should give, devise, and bequeath all their estate and property, of every kind and description, to the survivors and survivor of them, and of each of them, so that the last one surviving should receive and have the entire estate of the two having died, and that she, in turn, the last of the said sisters so surviving, should make a last will and testament by which she would leave her entire estate, of every kind and description, including what she had in her own right, and what she had or should receive from her two sisters, unto all their nieces living at the time of her decease, to share and share alike."

The rules applicable to actions of this character have recently been formulated by the court of appeals in clear, precise, and com-

prehensive terms. Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265. It must now be deemed to be settled in this state that there is no reason in law, and no public policy, which forbids parties to agree among themselves to execute mutual and reciprocal wills. Such wills, although remaining revocable upon notice of an intention to revoke being given by either party to the agreement during the lifetime of all the parties thereto, become, upon the death of one of the parties, fixed obligations, of which equity will assume the enforcement, if attempted to be violated by subsequent testamentary disposition on the part of the survivor. The enforcement of such an agreement interferes to some extent with the statutory freedom of a person to dispose of his property after his death by a last will, and the courts will refuse to interfere unless the agreement sought to be enforced is clearly and definitely established by full and satisfactory proof. In this class of cases the ordinary rules which control in actions to compel the specific performance of contracts, and which are designed to furnish reasonable safeguards against fraud, should be rigidly applied. These rules require the contract to be certain and definite in all its parts, that it be mutual and founded upon an adequate consideration, and that it be established by the clearest and most convincing evidence. Gall v. Gall, 29 Abb. N. C. 19, 19 N. Y. Supp. 332. It is not essential, however, that such an agreement should be established by direct evidence. It may be established from such facts and circumstances as will raise an implication that it was made, and as are re-enforced by evidence of the conduct of the parties at the time and subsequently.

Weighing the evidence in this case by the strict rules above stated, I am unable to escape the conviction that the plaintiffs have successfully established the agreement set forth in their complaint. The three sisters who are said to have made the agreement here sought to be enforced were the unmarried daughters of William Everdell, from whose estate they each received a modest competence. They had several brothers and one married sister, none of whom seem to have been financially prosperous. At the time the agreement is said to have been made, the brothers and the married sister had numerous children, of whom 11 were daughters, all unmarried, save 1. William Everdell died in 1869, and the three sisters lived with their father during his lifetime, and continued to live with his widow, their stepmother, until her death, in 1874. Thereafter, Matilda and Catherine lived with a brother in New Jersey, while Mary L. took up a residence with two sisters named Hill, with whom she continued to reside until she died, in 1897. These sisters were not of her blood, but her relations with them were evidently very close, and they are substantial beneficiaries under the will which she left. The evidence of the agreement is found in numerous declarations made by all of the sisters to different persons, corroborated by wills actually made by them in the year 1881. That some agreement was made between them as to the disposition of their property seems to be beyond question, for even the defendants' witnesses testify to declarations to this effect by Mary L. Everdell. Prior to 1881 all three of the sisters stated repeatedly to members of the

family that they had entered into such an agreement as is set forth in the complaint; and Mary L. Everdell repeated the statement as late as 1883 to a witness, who, while not a member of the family, or interested in any way in the disposition of the property, was evidently on intimate terms with the sisters. There is no evidence that Matilda or Catherine ever stated the agreement in any other terms. There is evidence that Mary L. stated it somewhat differently at times. Elizabeth Hill, a beneficiary under and executrix of the will which Mary L. Everdell left, testifies that some time prior to 1879 the latter said that she and her sisters had made an agreement to the effect that each sister was to leave her property to the others, and the last one was to divide her sister's estates between the nieces, and reserve the right to leave her own estate where she liked. Other witnesses called by the defendants testified to declarations by Mary L. Everdell at various times, but such declarations, as recited by them, do not agree precisely either with the declarations proven by the plaintiffs, or with those testified to by Miss Hill. In any event, the will actually left by Mary L. Everdell violates her agreement, whether the plaintiffs' version or that of Elizabeth Hill be accepted. After a full opportunity to observe the demeanor of the witnesses and to judge of the accuracy of their recollections, and after a careful examination of the evidence and due consideration of the circumstances of the case, I am convinced, as I have already said, that the agreement between the sisters was that which is alleged in the complaint.

Matilda Everdell died first, in July, 1881, leaving a will dated April 4, 1881, in which she carried out the agreement on her part by leaving all her property to her two surviving sisters. Catherine Everdell followed her in about six months, leaving a will dated July 26, 1881, in which she also carried out the agreement on her part by leaving all her property to the surviving sister, Mary L. Everdell. Thus, Mary L. Everdell had received the full benefit of the agreement made with her sisters, and was irrevocably bound to carry out the agreement on her part. The will of Matilda Everdell had been drawn by a lawyer. The will of Catherine Everdell, and a will executed by Mary L. Everdell on July 22, 1881, were copied by a layman from the will of Matilda, with certain variations. Matilda had left her estate to Catherine and Mary jointly. Catherine left her property to Mary, and Mary left hers to Catherine. All three of them provided, in similar terms, that certain securities, which each had loaned to a brother, should be held by him until he was willing to return them, or for his life. In one respect, however, Mary's will differed radically from that of her sisters. Matilda had given all her property to Catherine and Mary, but the latter gave to Elizabeth Hill all of her interest in a certain house in the city of New York. I do not consider that this variation makes anything against the plaintiffs' contention. Clearly, this will of Mary was made at a time when she deemed it possible that Catherine would outlive her, for the bulk of the estate was given to Catherine absolutely. The bequest to Elizabeth Hill was therefore, in any case, a violation of her agreement, whether we accept the plaintiffs' version

of that agreement, or that of Elizabeth Hill. It appears, however, that, at the time the will was made,, Mary had already lived for some years with the Hill sisters; and it is not unreasonable to suppose that her friendship for Elizabeth Hill, which ₊afterwards became so marked, had already begun to influence her mind and actions. That either her association with the Hill sisters, or some other cause, operated to alienate her affections in some degree from the members of her own family, is obvious. In her will of 1881 she expresses implicit confidence and trust in one of her brothers, and provides, as her sisters had also done in their wills, that he should continue to use and enjoy certain securities loaned to him as business capital, "until he is willing to pay over the same, and for and during his natural life," yet a few years afterwards we find her relentlessly pressing him for an accounting. That the agreement between the sisters was made as alleged in the complaint, I have no doubt. Matilda and Catherine loyally performed their parts of it. Mary received all the benefits which the agreement secured to her, and thus debarred herself from disposing of her property otherwise than in accordance with her agreement. That agreement was made expressly for the benefit and advantage of the nieces, and they have, therefore, a standing in equity to enforce it, as against the legatees and legal representatives of Mary L. Everdell. Edson v. Parsons, 155 N. Y. 571, 50 N. E. 265. The proceedings in the surrogate's court do not constitute an adjudication against the plaintiffs which concludes them in this action. This is not an action to establish a will, but to enforce an agreement to make a will in a certain way. With such a contention, which is one purely for equitable cognizance, a surrogate has no jurisdiction to deal.

The plaintiffs are therefore entitled to a decree, the terms of which should be settled on notice. Ordered accordingly.