[No. 9974.  Department One.  February 16, 1912.]

## ELIAS ERICKSON, *Respondent*, v. WILLIAM COOK *et al.*, *Appellants*.[1]

SPECIFIC PERFORMANCE—ORAL CONTRACT—PAYMENT AND POSSESSION —EVIDENCE — SUFFICIENCY — DELAY—ESTOPPEL.  While an executed oral contract for the sale of land must be proved by clear, cogent and convincing evidence, it need not be by direct testimony, especially when supplemented by the acts of the parties; and the evidence is sufficient to warrant specific performance, where it appears that, in 1902, plaintiff having orally purchased 1½ acres of wild land for $30, taken possession, and fully paid for the same, the defendant in 1903 orally agreed to sell an adjoining 2½ acres at the same price, which is the tract in dispute, permitted the plaintiff to fully pay for the same in services, and tendered no deed of the first tract when paid for, nor any pay for services received, allowing plaintiff to expect one deed for the whole tract when fully paid up, that in 1905 the defendant reserved from another sale the 2½ acres, stating to the purchaser thereof that he had sold it to the plaintiff, that in 1910, the plaintiff took possession and started to clear the last tract, which adjoined and was in a sense part and parcel of the other, the land being wild and reducible to cultivation only by great effort; the defendant in such case being estopped to set up plaintiff's delay in demanding a deed or taking possession of the last tract.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered May 8, 1911, upon findings in favor of the plaintiff, in an action for specific performance. Affirmed.

*Faussett & Smith*, for appellants.

*E. P. Walker* and *Stiger & Dally*, for respondent.

CHADWICK, J.—This is a suit for specific performance of an oral contract to convey land.  That our argument may be the better understood, we reproduce a plat which shows the property involved and its relation to other properties coming from a common grantor.

[1]Reported in 121 Pac. 825.

In the year 1902, plaintiff Erickson contracted with Cook, one of the defendants, for the one and a half-acre tract. He paid $20 on the purchase price which was $30, or $20 an acre.   We take it from the testimony that all of the land then owned by Cook was wild or brush land.   Erickson says that, in 1903, Cook agreed to sell him the two and a half-acre tract at the same price.   Between 1902 and the time this action was begun, in November, 1910, Erickson improved the one and a half-acre tract by fencing the whole piece and clearing and seeding one acre.   He also built a house or shack.   By mistake this was put over the line on the land marked "Buck," but now owned by defendant Le Mense. When the line was run out by a surveyor, the house was

moved across the line. No improvement was made on the two and a half-acre tract, for some time. The year is not certain, but from the whole evidence it is most likely that it was in the year 1909, when Le Mense, who owned the Buck tract and who was desirous of connecting his two pieces of land, put in a roadway leading from the county road to his land-locked tract. This he did, after obtaining the consent of Erickson, whom he then believed to be, and recognized as, the owner. This was done after Erickson had refused to sell him the one and a half-acres or a way across it. Erickson also fenced in a small piece of the two and a half-acre tract, possibly a half acre, next to the road, which was cultivated in garden.

In the summer and fall of 1910, Erickson cut, slashed, and burned a part of the timber on the two and a half-acre tract, and while thus engaged, made demand on Cook for a deed. This being refused, this suit was begun. The day before the complaint was served, Cook and wife executed two deeds, one to Erickson for the one and a half-acre piece, and one to Le Mense for the two and one-half acres. He had sold the latter tract to Le Mense for $225. These deeds were placed on record by Cook, without other delivery and at his expense. The fact of the sale to Le Mense being brought home to Erickson, he amended his complaint by bringing Le Mense and wife in as parties. It is not denied that, if he is right as to the amount of land he was to get, Erickson has paid the full purchase price in money and services. He worked for Cook off and on for several years, Cook keeping no account of what was his due; but he practically admits the receipt of the money and the rendition of services aggregating $80 and more. On the part of Cook, it is contended that the only contract to convey he ever made with Erickson was for the one and a half-acre tract, and that he has performed this contract. Cook says that he had some talk with Erickson about the two and a half-acre tract, but only gave him a verbal option, "a first chance to purchase;" that no price was

ever fixed, and that he offered it to him before he sold to Le Mense; that the contract if made was void under the statute of frauds, and that there has been no performance which in law will relieve the transaction of the burden of the statute; that the improvements were made at a time so remote from the time of the alleged contract as to be without force to sustain it, and that they were so made without his knowledge and consent, and consequently against his will. Other defenses were urged which it is not necessary to mention or review.

Other facts are pertinent. In 1905 one Hansen began negotiations for the purchase of the tract marked "Cook" (Hansen). At the time, Hansen knew nothing of Erickson's deal for the two and one-half acres. Terms were arranged and the deed was to be executed on the next day. Afterwards Cook telephoned Hansen "that he had forgotten to mention that he had sold Erickson four acres, and if I [Hansen] wanted to accept the land and take that four acres out. I said, 'Yes.'" Cook does not deny this statement, but explains it, saying:

"At the time I had it on the market to sell to Mr. Hansen he [Erickson] wanted it. I told him [Hansen] I was going to reserve four acres, and so notified Mr. Hansen to that effect, that I had reserved four acres. Q. Why were you going to reserve four acres? A. Mr. Erickson said he would like to buy some more land. Q. He wanted to buy some more land? A. He said may be he would want to buy some more land. Q. Was there any talk at that time as to the consideration? A. No price was set. Q. That was to be determined when he got ready to buy the land? A. ·Yes. Q. In other words, you were to give him the first option in case you sold that two and a half acres? A. Yes."

In 1906, Le Mense bought the land marked "Buck" (Le Mense), for $175, and ten or eleven years before the trial he bought the five-acre tract for $90; and as heretofore stated, Erickson bought the one and a half-acre tract in 1902 for $30. So that, if Erickson's theory is to be accepted, it will

be seen that he agreed to pay a price that was fair at the time of the contract. Erickson is an old man, a native of Sweden, and does· not read or write the English language. Moreover, Erickson was reputed to be the owner of the land in controversy as well as the one and one-half acres, and the fact that Cook was withholding the deed was a matter of comment and concern to the neighbors, some of whom believed that Cook intended "to beat him out of it;" for Erickson, because of his industry and reputed integrity, seems to have had the good opinion and sympathy of the whole neighborhood, even to the defendants Mr. and Mrs. Le Mense. From a decree in favor of the plaintiff, defendants have appealed.

It is well understood that contracts of the kind here relied upon must be proven with no ordinary degree of certainty. The proof to sustain them must be clear, cogent, and convincing. It is equally well settled that oral contracts for the conveyance of land must be sustained by proof that the quantity or boundaries of the land were understood, and the consideration for it must be proved with certainty or admitted; and further that there must have been performance, by taking possession and asserting ownership at the time, or within a reasonable time thereafter. These are the legal principles upon which appellants rely. They are elementary, and to avoid tedium in this opinion, we shall not cite either our own cases or the text books to sustain them. It does not follow that, because an oral contract must be so proved, the proof must be direct.

"An oral agreement that operates as a transfer of land must, of course, be made out by clear and satisfactory proof but it is not essential that it be established by direct evidence. If the facts and circumstances brought out are such as to raise a convincing implication that the contract was made and to satisfy the court of its terms, and that there would be no inequity in its enforcement; it is enough. *Anderson v. Anderson, supra; Edson v. Parsons,* 155 N. Y. 555, 50 N. E. ·265. This is especially true where, as here, the parol evi-

dence is supplemented and supported by the acts of the parties." *Bichel v. Oliver*, 77 Kan. 696, 95 Pac. 396.

See, also, 36 Cyc. 690, 691.

We shall not rehearse the proof offered to sustain the contract, for reference to that which we have set forth in this opinion will carry conviction, as it did to the trial judge, that appellant Cook contracted to sell the two and a half-acre tract to Erickson; that the land was sufficiently identified at the time; or if not, it was thereafter so identified by Cook when he sold to Hansen as to estop him from now claiming that there was uncertainty on that score; that the consideration was agreed upon and has since been paid, and that Erickson has committed no act or omitted any duty that would make it inequitable to compel performance. We believe the contract was sufficiently proved.

Therefore, there are but two propositions remaining to be considered; the delay in asking for a deed, and delay in taking possession of the land. The testimony is somewhat conflicting as to the demand for a deed. Erickson says he asked for it several times. This Cook denies. It seems to us that Cook is in no position to complain of the delay on this account, although it be admitted that no demand was made until October, 1910. He admits that he never tendered a deed for the one and one-half acres, which were fully paid for in 1902 or 1903 at the latest. He permitted Erickson to work about his ranch, doing the chores and hauling wood, long after the price of the first tract had been worked out. He never offered to pay him anything; yet, if his present contention be accepted, he knew that Erickson was his creditor. That Erickson made no demand for money, coupled with the fact that Cook never offered to deed the one and a half-acre tract, convinces us that Erickson expected, and Cook by his conduct led him to believe, that he would receive one deed for the whole four acres. Possession of the two and a half-acre tract was in a sense delayed, but the time in which possession must be taken is a relative question. The property here in-

volved was not a town lot or an open farm. Although in a well-settled community, it was wild land which, as the testimony shows, could not be reduced to cultivation without great effort and the expenditure of considerable money. The tract adjoins the one and a half-acre tract upon which Erickson was slowly digging out an acre of cleared land. It was in a way a part and parcel of it. He asserted ownership, was the reputed owner, and contracted with reference thereto. Some months or a year before this suit was brought, he fenced a part of the land and put it in cultivation. In measuring the equities in a case like this, this court can almost take judicial notice of the fact that wild or uncleared land cannot be taken possession of by men of small means with powder and donkey engine. Their work must follow the slower methods of the axe, the mattock, and burning. It may take months or years to clear a small tract of land, which until cleared would not even bear the cost of fencing which, under the rules of the common law, was the first and highest evidence of possession. Courts cannot make an inflexible rule in cases of this character. They must be made to rest upon the equities of the particular case. It is made to appear that a judgment for damages against Cook could not be collected under an execution. We find nothing that should deprive Erickson of the fruits of his contract. Cook has suffered no loss, nor has the delay worked to his disadvantage except that he has paid the taxes. Of this item, the testimony shows an offer to pay on the part of Erickson. This item should not be held as controlling, for the burden could have been put on Erickson at any time. While we do not admit that the testimony shows that there has been a great advance in the value of the land, for there is no testimony to show its present value, except the purchase by Le Mense, and it clearly appears that he bought under the stress of necessity; yet if it does, the fact that it was paid for by Erickson long before the sale to Le Mense would destroy

the effect of that testimony, should it be taken at its full value.

The judgment of the lower court is affirmed.

DUNBAR, C. J., GOSE, PARKER, and CROW, JJ., concur.