HORACE KINGSBURY, Plaintiff, *v.* IRA WILLIAM KINGSBURY, Individually and as Executor, etc., of ORRIETTE KINGSBURY, Deceased, and Others, Defendants.

Supreme Court, Kings Special Term, March, 1923.

**Wills — evidence necessary to establish agreement for mutual wills — abrogation of agreement.**

The well-settled rule that an agreement whereby a person deprives himself of his right to will his property as he pleases up to the time of his death must be established by clear and convincing evidence, applies to an agreement for mutual wills.

In an action for specific performance of an alleged agreement between plaintiff and his sister, now deceased, in effect that the one first to die should leave all of his or her property to the other, it was claimed that wills executed by them in 1911 containing such reciprocal provisions in favor of each other, were mutual wills executed in pursuance of the alleged agreement. The sister died by her own hand in August, 1922, and a will executed by her several months before that time and containing different provisions was duly admitted to probate. Evidence considered, and *held*, not to meet the tests required in such cases and that no contract between plaintiff and his sister to make mutual wills had been established.

The court finding upon conflicting testimony that if there ever was an agreement between the parties for mutual wills it was abrogated prior to the death of plaintiff's sister, judgment will be given in favor of the defendant for the dismissal of the complaint upon the merits.

SUIT for specific performance of a contract.

*Philip A. Brennan* (*Frederick S. Lyke*, of counsel), for plaintiff.

*Charles C. Lockwood* (*Henry F. Cochrane*, of counsel), for defendant Kingsbury.

*Henry F. Cochrane*, for defendant Nellie Wilson.

BENEDICT, J. This is an action in equity for the specific performance of an alleged agreement between the plaintiff and his sister Orriette Kingsbury, now deceased, whereby, it is claimed, they agreed in effect that the one first to die should leave all of his or her property to the other. And it is claimed that the wills executed by them on September 28, 1911, containing such reciprocal provisions in favor of each other, were mutual wills, executed in pursuance of said alleged agreement. Afterward, on June 27, 1922, Miss Kingsbury executed another will containing different provisions. She died by her own hand on August 16, 1922. The will of June 27, 1922, was admitted to probate by the Surrogate's Court of Kings county on October 11, 1922.

The first question to be determined is whether it is sufficiently established by the evidence that the wills of September 28, 1911, were in fact " mutual wills " in the technical sense of that term; that is, whether they were executed in pursuance of such an agreement as has been mentioned.

It is well settled that an agreement whereby a person deprives himself of his right to will his property as he pleases up to the time of his death must be established by clear and convincing evidence, and this applies to an agreement for mutual wills. In the well-known case of *Edson* v. *Parsons*, 155 N. Y. 555, the Court of Appeals held that the fact that two sisters executed at the same time wills containing reciprocal provisions in favor of each other and identical provisions as to the disposition of the

property of the survivor did not of itself necessarily establish a contract so as to preclude the survivor, after the death of one sister, from making a new and different will; and it was further held that such a contract must be established by the clearest and most convincing evidence.

The evidence in the present case does not, in my opinion, meet this test. The testimony of the witness Alexander, the lawyer who drew the wills, is that at the request of the plaintiff he visited the residence of plaintiff and his sister; that the plaintiff in the presence of his sister " stated that he and his sister had decided to make mutual wills," " that he intended to leave all that he had to his sister." The witness then asked Miss Kingsbury what her wishes were and she answered, as he testified on direct examination, as follows: " So long as Horace is leaving everything to me, I intend to leave everything to him." On cross-examination he gave a slightly different version of this remark, as follows: " So long as Horace has made a will in my favor I intend to make one in his." The witness said he would prepare such wills, and did so, and sent them to Mr. Kingsbury by mail. Subsequently the witness called at the house, and the wills were executed at the same time, before the same witnesses, after both plaintiff and his sister had stated that they were satisfactory. All this to me justifies no inference further than that the plaintiff and his sister had a then present intention of making wills in each other's favor; but I cannot see that it establishes an agreement whereby either should be precluded from revoking at any time at pleasure and without notice to the other. The language used was not a promise by either party, but merely a statement of intention. I attach no importance to the use of the term " mutual wills " by the plaintiff, because there is nothing to show that either the plaintiff or his sister was acquainted with the technical meaning of that term.

The testimony of the witness Wiebe fails to establish any agreement such as is alleged. It is merely that on certain occasions when the witness was considering buying a house from the plaintiff, both plaintiff and his sister said that whatever each had would go to the other in case of death; a statement again of present intention, but far from showing that there was a contract to that effect.

The witness Eunice Walker testified to statements of Miss Kingsbury that she would like to leave or give some of her property to certain persons " but she was bound by an agreement to her brother, the money having come from the father, and it was to revert to her brother at her death, and his money was to revert

to her at his death;" and again "that she had promised her brother that nothing that she had would go to anyone but him, and their agreements were mutual, and she could not do it." If we assume that this testimony was clear enough to establish such an agreement, it is not convincing to me, because of the evident bias of this witness in favor of the plaintiff. It is significant also that, although Miss Kingsbury spoke to several persons about making a new will, the plaintiff is unable to produce any other witness to whom she said anything about being bound by any agreement to leave her property to the plaintiff.

No other witness gave any testimony in favor of the plaintiff which need be recited.

The plaintiff relies strongly on certain requests contained in letters of Miss Kingsbury to the plaintiff which were found in the house shortly after her death. Two of them contain requests to the plaintiff as to the disposition of Miss Kingsbury's property. None of them is dated. Presumably they were not all written at the same time. Those containing the requests aforesaid may, for all that appears, have been written prior to the making of the will of June 27, 1922. They were all written by her in evident agony, and disclose the purpose to commit suicide, due to severe physical suffering which Miss Kingsbury attributed to the removal of her teeth about two years before, and which had resulted in a diseased condition which prevented her from eating sufficient food and having sufficient sleep. Even assuming that the letters containing the aforesaid requests were written subsequent to the will of June 27, 1922, the requests fall very far short of proving that she had made an agreement with her brother to leave all her property to him. She may perhaps have had some question in her mind as to whether there was such an agreement or not, or she may have doubted the validity of the second will on some other ground, or in her frenzy she may have forgotten that she made it.

There are only a few cases in which the sufficiency of the evidence to establish a contract such as is here alleged has been considered. I have already referred to the case of *Edson* v. *Parsons, supra,* where the wills were held not to be mutual wills, although it was shown that they were executed on the same day before the same witnesses, and that the sisters planned their testamentary dispositions together and together visited their lawyer to consult him with reference thereto. In *Wallace* v. *Wallace,* 216 N. Y. 28, the evidence in favor of an agreement seems stronger than in the present case, and yet it was held insufficient. The cases of *Rastetter* v. *Hoenninger,* 214 N. Y. 66, and *Hermann* v. *Ludwig,*

186 App. Div. 287; affd., 229 N. Y. 544, differ materially from the present case, for in each of them the parties executed not separate wills but a joint will, which contained in itself language evidencing an agreement. In the *Rastetter* case, for example, there was a clause at the beginning of the will, and repeated at the close, declaring " this, and this only, to be our last mutual and joint Will and Testament." And the will in the *Hermann* case contained a closely similar clause. The present case also differs from cases such as the *Rastetter* v. *Hoenniger* case, or *Morgan* v. *Sanborn*, 225 N. Y. 454, where the parties have a common interest in the ultimate beneficiaries to whom the combined property of the testators was to be given.

The plaintiff has not shown by clear and convincing evidence that any contract existed in this case between the plaintiff and his sister for the making of mutual wills, and I shall find, therefore, as a fact that there was no such contract.

Assuming, however, for the sake of argument that the plaintiff had established the contract alleged, I should be obliged to find that it was revoked. Where mutual wills are made it is well settled that during the lifetime of both parties either can revoke effectively on notice to the other. *Edson* v. *Parsons, supra,* 566; *Rastetter* v. *Hoenninger, supra,* 73. The defendants' witness William Walters testified that on one occasion about a year and a half or two years prior to the trial he heard Miss Kingsbury, speaking to the plaintiff concerning a will, say: " You changed yours, and I am going to change mine." This witness was not impeached and his credibility was in no way impaired. There is also a statement in a letter of Miss Kingsbury to Mrs. Erichson, which was admitted without objection, as follows: " Bro. and I had a little talk, and he stands firm for Mrs. Ware, saying she is all right in every way, and that he shall make a new will and of course that means that she will get everything. I said if I go down to 121 (a house to which plaintiff desired to move) will you do the right thing by me. He said I promise nothing, and my money shall go where I want it to go."

Mrs. Erichson also testified to hearing a conversation between the plaintiff and his sister in the course of which plaintiff said: " When I am making my will, now I will suit myself about it." Miss Kingsbury said: " Oh, brother; " and he replied: " Well, you can suit yourself — I will suit myself with my money, and you can suit yourself, what you do with your money."

There was also other evidence along the same line. The plaintiff did not appear on the trial, but he testified in a deposition taken before trial at his own instance that he did not during his sister's

life make any other will than the one made by him on September 28, 1911. This testimony coming as it does from the plaintiff himself in the form of a statement out of court, I cannot give it as much weight as if he had appeared himself on the trial as a witness on his own behalf on all the issues involved and had undergone the ordeal of a cross-examination. All the unusual circumstances which cropped out in the evidence concerning the change of attitude and conduct on the part of the plaintiff towards his sister, the pitiful efforts on her part to maintain her confidence in her brother's affection and to save him from coming under the malign influence which she thought was alienating him, even to the extent of causing him to change his will, and her fatal disappointment when these efforts appeared to fail — these circumstances make his evident reluctance to submit to cross-examination at the trial more than ordinarily significant. I find on conflicting testimony that if there ever was an agreement between the parties for mutual wills, it was abrogated prior to the death of Miss Kingsbury.

The conclusions thus reached will result in the disposition of the property of Miss Kingsbury in accordance with her actual wishes at the time of her death. As already intimated, for about two years prior to her death the affectionate and harmonious relations which had theretofore existed between her and her brother had been somewhat disrupted. The evidence plainly indicates that Miss Kingsbury thought that her brother had fallen under the sinister influence of a Mrs. Ware, a cousin of his, who lived in Vermont; and Miss Kingsbury evidently believed that if she should die, and this Mrs. Ware should succeed in obtaining a divorce from her husband, the plaintiff would marry her, and that plaintiff either then had or probably would make a new will leaving all his property to Mrs. Ware. Mrs. Ware had written, it appears, many letters which were offensive to Miss Kingsbury, and the latter was very desirous that none of her property should ever come into the possession of Mrs. Ware. This was apparently the inducing cause of her making the will of June 27, 1922.

Much more might be written but I think the foregoing will suffice to indicate to the parties and to a reviewing court the substantial reasons for the conclusion at which I have arrived on a full consideration of the testimony and of the underlying principles of law governing the case.

Judgment for the defendants dismissing the complaint on the merits, with costs.

Judgment accordingly.