(27 Misc. Rep. 462.)

### HERRICK v. SNYDER et al.

(Supreme Court, Special Term, Onondaga County. May, 1899.)

1. WILLS—CHILDREN OF SECOND MARRIAGE.
    A man having three children by his first marriage married a widow having three children. The husband died in 1884, and the wife in 1897, leaving a will dated July 21, 1897, by which she gave the residue of her estate "unto the children of my first and second marriage." No children had been born during the second marriage. *Held*, that by children of her "second marriage" she meant her stepchildren.

2. SAME—AGREEMENT TO MAKE RECIPROCAL WILLS.
    While an agreement to make reciprocal wills will be enforced in equity, the proof of the agreement must be clearly and definitely established.

3. SAME—ATTESTATION IN PRESENCE OF TESTATOR.
    Under 2 Rev. St. (9th Ed.) p. 1877, § 40, subd. 4, providing that, in case of a will, "there shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator," such witnesses need not sign their names in the presence of the testator.

Action by Caroline S. Herrick against Ferdinand Snyder and others for partition of real estate.

Sholes & Ferris, for plaintiff.

F. G. Fincke, for defendants Herman Snyder and others.

Matteson & De Angelis, for defendants Edith L. Morgan and others.

HISCOCK, J.   At some time prior to January 2, 1871, Gottlieb Kraft, a widower, having three children by a prior marriage living, and Katherine Snyder, a widow, having also three children by a prior marriage living, were married.   January 2, 1871, one Ferdinand Snyder and wife sold, and by warranty deed conveyed, to said Gottlieb Kraft, an undivided one-half of certain premises situate in the town of Forestport, Oneida county, N. Y.   On said day said Snyder and wife sold and conveyed the other undivided one-half of such premises to said Katherine Snyder or Kraft.   Said premises include the ones involved in this action.   Said Gottlieb Kraft and Katherine Kraft entered into possession of said premises, upon said sales to them, and remained in possession of the same until some time in the year 1884, when Gottlieb Kraft died, leaving a last will and testament, dated November 5, 1883, by which, after the payment of his debts, he gave the use of all of his property, including his interest in said premises, to said Katherine Kraft, for the term of her natural life, and after her death to his children and her children, share and share alike. Said will was duly admitted to probate.   After the death of her husband, said Katherine Kraft took up her residence with her daughter Caroline S. Herrick, where she resided until her death, which occurred August 13, 1897.   Prior to her death, and on or about October 26, 1896, she executed and delivered to the plaintiff a deed purporting to convey absolutely a portion of the premises above mentioned, containing 50 acres of land, and which was recited to be in consideration of $1 and other good and valuable considerations, including natural love and affection.   On or about June 9, 1897, she executed and delivered to the plaintiff another deed, whereby she conveyed an undivided one-half of a certain portion of the premises conveyed to her as hereinbefore, and which deed was recited to be in consideration of the sum of $100.   Katherine Kraft left a paper, purporting to be a last will and testament, which purports to have been executed on or about July 21, 1897, which contains, among others, the following clause:

"I give and bequeath all that remains of my property unto the children of my first and second marriage, the said property to be equally divided among them."

Said will has never been admitted to probate.   Said Gottlieb and Katherine Kraft had no children of their marriage.   The children and descendants of children of their respective former marriages are parties to this action.

Various defenses are urged by the defendants; they, however, not always agreeing in urging the same ones.

It is urged that the deeds upon which plaintiff relies were procured by fraud or undue influence, and are invalid for that reason.   With-

out reviewing at length the evidence which might be said to bear upon this question, I conclude that this defense is not at all sustained.

It is urged that there was an agreement between Gottlieb Kraft and Katherine Kraft that they should respectively execute mutual wills covering this real estate in question, which should accomplish the result that the survivor of them should have the use of the property of both of them during his or her life, and that upon the death of the survivor the property of both of them should be equally divided among the six children of both of them, that the deeds executed by Katherine Kraft to the plaintiff are in violation of that agreement, and that this court should therefore restrain their enforcement and refuse to give them effect. Again, without reviewing at length the evidence upon this subject, I am led to the conclusion that the proofs do not sustain this defense. There is no need to discuss the general proposition of law that courts will sustain and enforce an agreement for mutual wills, when found to exist, or that there need not be direct proof of an express agreement, but that the same, like any other contract, may be found from circumstances. The courts, however, have established the rule that such an agreement must be very convincingly proved. In the recent case of Edson v. Parsons, 155 N. Y. 555, 565, 50 N. E. 265, Judge Gray, speaking in behalf of the court, says:

"I know of no absolute rule of law which impresses upon wills, similar in their cross provisions, that mutual character by force of which the survivor's estate comes under a trust obligation. I understand that something more is needed to warrant equitable intervention, and, in the absence of an express agreement, that it must be found in circumstances which so surround the transaction as imperatively to compel the conclusion that the parties intended and undertook to bind themselves and their estates irrevocably in the event of the prior death of one."

And again, at pages 566, 567, 155 N. Y., and page 268, 50 N. E., the same judge says:

"I fully concede that there is no reason in law, nor any public policy, which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills, which, though remaining revocable upon notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations, of which equity will assume the enforcement, if attempted to be impaired by subsequent testamentary provisions on the part of the survivor. * * * But equally would it be the duty of a court of equity to refuse that relief where the agreement sought to be given effect was not certain and definite. Clearly, it should hesitate to assume the grave responsibility of implying an agreement whose existence depends upon circumstances inconclusive in their nature, and permitting an inference either way. It is not essential to the intervention of equity, in order to prevent the accomplishment of fraud, that an agreement should be established by direct evidence. It may be established from such facts and circumstances as will raise an implication that it was made, and may have reinforcement from the evidence of the conduct of the parties at the time and subsequently. But, concerning as it does the statutory right of a person to dispose of his property after his death by a last will, the court should refuse to interfere unless the agreement depended upon for the award of the relief demanded has been clearly and definitely established."

I do not feel that the alleged agreement urged by some of the defendants in this case has been established within any such rule of certainty as above indicated.

The more interesting question arises in connection with the issue raised, whether the purported will executed by Katherine Kraft was so executed as to make it a valid will. And this question arises simply and solely from the failure of one of the attesting witnesses to subscribe her name to the will in the presence of the testatrix and of the other witness, for otherwise the evidence is amply sufficient to warrant the conclusion that the will was properly executed. I have no hesitation in finding that, in accordance with the provisions of the statute covering that subject—First, the will was subscribed by the testatrix at the end of it; second, that such subscription was made by the testatrix in the presence of each of the attesting witnesses; third, that the testatrix at the time of making such subscription declared the instrument so subscribed by her to be her last will and testament; fourth, that there were two attesting witnesses, who acted as such at the request of the testatrix,—narrowing the question as above stated to the inquiry whether it was necessary for the two attesting witnesses to sign their names to the will in the presence of the testatrix. The facts in this connection are as follows: After Mrs. Kraft had subscribed her will in the presence of the two attesting witnesses, and had declared the same to be her last will and testament, and requested two persons to act as witnesses, one of the witnesses then and there, in her presence and in the presence of the other witness, signed his name at the end of the will. The other witness, a Mrs. Shafer, was in a hurry to go home, and she said that she would do so, and get her supper on the table, and then would come back for the purpose of signing the instrument. Before she could return, however, and within from 15 to 30 minutes, the other witness, Mr. Nestle, brought the will to her house, and she signed it as a witness. After she had so signed it, said other witness took the will back, and showed or gave it to the testatrix, with Mrs. Shafer's signature on it, and thereafter, at her request, kept it. After Mrs. Shafer had so signed it, she also saw the testatrix within a short time, and told her that she had signed it; and Mrs. Kraft stated, in substance, that everything was all right, and she was glad it was over. It was in the neighborhood of 100 feet from the house of the testatrix to the house of the witness, where she signed the will, and concededly the signing by the witness was not seen by the testatrix. It is urged that such signature by this witness was not a sufficient compliance with the statute, and that the will is therefore invalid. I am unable to agree with this contention. Formerly the statute covering this subject directly and explicitly provided and required that a will should be subscribed in the presence of the testator by the witnesses thereto. 1 Rev. Laws, p. 364, § 2. The present statute, however, provides that in the case of a will "there shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator." 2 Rev. St. (9th Ed.) p.1877, § 40,subd.4. It will thus be seen that the statute makes the two-fold requirement that there shall be two attesting witnesses, and, secondly, that such attesting witnesses shall sign their names at the end of the will. The last provision is not necessarily incident to the attestation. Independent of it, and without it, there might

and would be simply a requirement that there should be two attesting witnesses, who, without signing their names at all, might still give proper proof of the execution of the will in the proper place and manner. Their signing the will is a provision precautionary, it may be, but still arbitrary, under the statute, and not at all essential to the other act. If signing the name was an essential and inherent element of attestation, there would be no occasion for an independent provision of the statute requiring it. The provision for attestation alone would then include and cover the act of signing. The provision for attestation necessarily requires that the witnesses should be present at the act of execution which they are to attest. They could not discharge their duty by attesting the execution, without being present at it and seeing and knowing it. But the signing of the name as above stated is not necessarily incident to, or a part of, such attestation, and I see no reason why any requirement fixing the time or place of signing should be interpolated into the statute upon this subject. The signing of the name must largely be for the purpose simply of indicating and identifying the person who has acted as a witness to the execution, and if, within reasonable limits, such signature is affixed after the attesting has taken place, it answers the same purpose, under the statute, as though affixed at the moment of execution, and in the presence of the testator. It may be said that it would be a safeguard to require such signature to be affixed the moment of the execution in the presence of the testator and the other witness, but, if this is so, the statute should have provided for such act. Concededly, unless the statute requires that this witness should have signed her name in the presence of the testatrix, there is no other rule which required it. And, independent of the reasoning upon this subject, it is significant that the provision of the former statute requiring the witness to sign in the presence of the testatrix has been dropped, and that in the place of it we have the present statute, simply requiring that the witness shall sign at the end of the will, etc. The same reasoning would seem to be applicable to the case of the signature by an attesting witness which is applicable to the certificate by a notary or other officer of acknowledgment before him. The act of acknowledgment, which corresponds with that of attestation in the case of a will, must, of course, necessarily take place in his presence. But it has never been held, so far as I know, that the affixing of his signature to the certificate of acknowledgment, as proof that it had taken place, must be made at the moment of the acknowledgment, or in the presence of the person making such acknowledgment. Certainly, in ordinary practice, it is very common for a notary to fill out the certificate of acknowledgment, and affix his name thereto, after the acknowledgment has been made, and the person making it has departed from his presence. My attention has been called to no case holding this invalid. And it has been held that the certificate may be made at another time than the acknowledgment. Stevens v. Martin, 18 Pa. St. 101; Grant v. Oliver, 91 Cal. 158, 163, 27 Pac. 596, 861. These views that the attesting witnesses need not subscribe in the presence of the testator were upheld in Lyon v. Smith, 11 Barb. 124, and do

not seem to have been overruled. It is true that this case seems to hold that an attesting witness must subscribe at the time of the execution or acknowledgment of the will. I think the signature of Mrs. Shafer may be regarded as substantially complying with this rule as to time. But I am unable to see how the statute requires that the witness' signature must be affixed at the moment of execution of the will, any more than that it should be affixed in the presence of the testator. The case of Lyon v. Smith affirms thus rule, upon the authority of Hollenback v. Fleming, 6 Hill, 303, and Henry v. Bishop, 2 Wend. 576. Both of these cases seem rather to hold that, in order to be a subscribing witness, a party must be present at the execution of the instrument of which he is the witness, and that he cannot become a subscribing witness to such instrument through a confession made by one of the parties executing the instrument after the, execution that he did so execute. This seems to be the gist of the decisions, rather than that, being properly a subscribing witness in this respect, one must actually subscribe his name at the time of execution.

Lastly, I come to a consideration of the meaning of the will of Katherine Kraft. As stated above, she leaves her property to the children of her first and second marriage. She had none of her own by her second marriage, and there was no possibility of her having them at the time she made the will, for her husband had been dead a long time. Therefore there is no meaning or significance to this clause, if strictly construed. Her second husband, however, did have children by his first marriage, and therefore by this second marriage she did acquire what are ordinarily known as "stepchildren." It is perfectly evident from all of the surrounding circumstances of the case that these are the children who are meant by children of her second marriage, and it does not seem to be a too violent rule of construction to interpret the will as referring to them.

Findings may be prepared in accordance with the foregoing conclusions, and agreed upon by the attorneys, or settled before me at any time upon two days' notice. Ordered accordingly.