1 WILL—EXECUTION.
    Under 2 Rev. St. c. 63, § 40, where the attesting witnesses have affixed their signatures in a room adjacent to that in which testator was lying, and the paper, with all the signatures affixed, was shown him, and in the presence of the witnesses he again declared it to be his will, it was a sufficient execution thereof.

2. SAME—MENTAL CAPACITY
    Testimony of experts who had never seen testator while alive, and took no part in the autopsy on his remains, that in their opinion he must have been of unsound mind at the date of the will, is overcome by testimony of witnesses testifying from actual observation to the fact that he was of sound mind.

Application to probate the last will of F. S. Phillips. Application granted.

Sullivan & Cromwell, for proponent.
George M. Curtis, for contestant.

THOMAS, S. The paper offered for probate was subscribed by the decedent, at the end thereof, in the presence of each of the attesting witnesses. At the time of making the subscription he declared the instrument to be his last will and testament. There were two attesting witnesses, and each of them subscribed his name at the end of the will at the request of the decedent. This is all that the statute requires. 2 Rev. St. c. 63, § 40. The attesting witnesses affixed their signatures in a room adjacent to that in which the decedent was lying, and the witnesses do not agree as to whether the decedent could have seen them as they wrote their names. The paper, with all of the signatures affixed, was shown him, and in the presence of the witnesses he again declared it to be his will. This was a sufficient execution of the instrument as a will. Our statute does not require that the attesting witnesses shall sign in the presence of the testator. Lyon v. Smith, 11 Barb. 125; Ruddon v. McDonald, 1 Bradf. Sur. 352; Herrick v. Snyder, 27 Misc. Rep. 462, 59 N. Y. Supp. 229. The testator was of sound mind. The physicians, who never saw him during life, and took no personal part in the autopsy upon his remains, but who were of the opinion that he must have been of unsound mind at the date of the will, are contradicted by every witness testifying from actual observation. At and after the time when the experts for the contestant were confident that the testator must have been an obvious incompetent, his conversation was interesting, and seemed intelligent to eminent physicians and clergymen, and to other disinterested and competent witnesses. Nothing approaching to proof of undue influence can be found in the case. On the contrary, the will in question is the third of a series of wills, by each of which the testator gave all of his estate to his wife, who now survives him and is the proponent; these wills being dated in 1893, 1895, and 1899. The other questions attempted to be litigated by the contestant have, in themselves, and except as they might have been material on the question of undue influence, no bearing on the present controversy. It is, for example, not important to determine whether the failure of the co-partnership firm composed of the testator and his brother, the contestant, in 1871, with its resultant loss of the brother's capital, was or was not the fault of the testator, or whether the testator for years furnished money for the support of his brother as a recognition of an obligation, or because of his affection for him, or to keep him quiet and escape from his society, or whether the spots on the brother's face resulted from dissipation or disease. It is sufficient for all present purposes that the will was duly executed by a competent testator, free from restraint or undue influences. The objections are overruled, and the will admitted to probate; costs payable out of estate.
     Probate decreed.