RASTETTER et al. v. HOENNINGER et al.

(Supreme Court, Appellate Division, First Department.   July 11, 1912.)

1. WILLS (§ 62*)—CONTRACTS TO DEVISE OR BEQUEATH—JOINT WILLS AS CON-
TRACTS.

The survivor of persons making joint or mutual wills with identical
provisions is only bound to carry out the scheme of disposition provided
therein, where they were made in pursuance of an agreement between
the parties that the survivor should abide by and carry out the provisions
of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 168; Dec. Dig. §
62.*]

2. WILLS (§ 62*)—CONTRACTS TO DEVISE OR BEQUEATH—JOINT WILLS AS CON-
TRACTS.

In the case of a joint will, as distinguished from mutual, separate
wills, bequeathing or devising the property of each to the other and pro-
viding a scheme of disposition upon the death of the survivor, the will
itself is sufficient, although perhaps not conclusive, proof of an agreement
on a sufficient consideration that the survivor would carry out the pro-
visions of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 168; Dec. Dig. §
62.*]

Ingraham, P. J., and Clarke, J., dissenting.

Appeal from Special Term, New York County.

Action by Elizabetha Rastetter and another, by Louise Hais-Wag-
ener, guardian ad litem, against John C. Hoenninger, as executor and
trustee under the will of Franz Rastetter, and another.   From a judg-
ment dismissing the complaint, plaintiffs appeal.   Reversed, and new
trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and SCOTT, JJ.

August P. Wagener, of New York City, for appellants.
Andrew C. Troy, of New York City, for respondents.

SCOTT, J.   This is an action in equity to enforce the provisions
of a joint will made by Franz Rastetter and Elizabetha Rastetter, his
wife.

On September 4, 1902, the said Franz and Elizabetha Rastetter
jointly executed a paper drawn in the form of a last will and testa-
ment, as to which they declared:

"This and this only to be our last mutual and joint will and testament."

The will provided that the survivor should have the income of *our*
real and personal property during his or her natural life for his or
her own use and benefit, and that "after the death of the survivor of
either of us, all our property both real and personal shall be divided
in the manner following":   One half being given to a daughter,
Barbara Schmidt, or her children, and the other half being given
to a son, John Rastetter, or his children.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The survivor was appointed executor or executrix as the case might be. The will concludes, as it began:

"We again declare this and this only to be our last mutual and joint will and testament."

Elizabetha Rastetter died in January, 1905, leaving, her surviving, her husband and the son and daughter mentioned in the foregoing will, which was duly admitted to probate March 29, 1905, and letters testamentary issued to Franz Rastetter, who duly qualified and took possession of the joint property. On August 27, 1908, Franz Rastetter died leaving a last will and testament dated August 1, 1907, in which he disposed of his property in a manner less advantageous to plaintiffs (who are the children of testator's son, John Rastetter, now deceased) than was the provisions made for them by the joint will of Franz and Elizabetha Rastetter.

Joint wills, meaning thereby single wills conjointly executed by two persons, are rare, and there are few cases to be found in the books dealing with them. Mutual wills, meaning thereby separate wills, identical in their provisions but separately executed, are more common. The most frequently cited instance of a will of the former class is that of Dufour v. Pereira, 1 Dickens, 419, which was made the subject of an extended and learned comment by Mr. Hargrave in his Juridical Arguments (volume 2, p. 277). Perhaps the most noted case of wills of the second class was Lord Walpole v. Lord Orford, 3 Vesey, Jr., 402. The leading case in our own jurisdiction wherein the subject of mutual wills was exhaustively discussed is Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265, which may be accepted as the embodiment of the law upon that subject.

[1] It seems to be agreed by all the authorities that the survivor, in the case of either a joint or mutual will, if bound at all to fulfill its terms, is so bound as by a contract, and the difficulty which has often been found in enforcing mutual wills has been the lack of evidence, de hors the wills themselves, that they were made in pursuance of an agreement between the parties that in case of the death of one testator the other should abide by and carry out the will made by him. It was this difficulty which defeated the plaintiff in the Lord Walpole Case, and in Edson v. Parsons, in neither of which cases did the wills themselves contain any evidence of such an agreement except such as might be found in the identity of the dispositions contained in the wills sought to be established as mutual wills. As was said by Judge Gray in Edson v. Parsons:

"The law permits a man to dispose of his property at his pleasure. He may make a valid agreement binding upon himself to make a particular testamentary disposition of his property, if it be a reasonable one, and he may validly renounce the power to revoke his will in the absence of fraud or deceit. Equity will enforce such an agreement, when well and fairly founded, and will not suffer him to defraud and to defeat his obligations by another will. But the court must have full and satisfactory proof of the agreement."

And it was for lack of such proof that the plaintiff in that case failed.

[2] When we come to consider a joint will, such as is presented in this case, I am of opinion that the will itself furnishes the requisite

proof, not conclusive perhaps, but sufficient to establish an agreement in the absence of any evidence tending to negative it.   Judge Gray, speaking of Dufour v. Pereira, remarks:

"In that case, however, the will was an instrument which was jointly executed by husband and wife, and, while not a conclusive, it was a very material, circumstance to be considered."

In Lord Walpole v. Lord Orford, Lord Chancellor Longborough had occasion to refer to Dufour v. Pereira, in which he had been of counsel, and stated that the will, jointly executed by the husband and wife in that case, was considered by the court, not as a will of the wife (who was the survivor), but as her contract with her husband for a valuable consideration, and that, when she survived and had accepted its terms, she bound herself to the conditions under which all the property was given by the husband's will.   In my opinion that just rule should be applied to the present case.   The will contained all the necessary elements of a contract, including a valuable consideration.   It is true that the paper does not contain the word "contract" or "agreement," and that there is no express promise in it that the survivor will carry out the scheme of disposition to which both agreed.   This, however, seems to me to be immaterial if the fact of an agreement can be found in the instrument itself.   That the parties had agreed as to the disposition of their property is evident from the will itself and from the fact that they jointly executed it.   The evidence that the will was the result of an agreement is shown upon the face of the paper, in this respect differentiating it from mutual or identical wills which exhibit no intrinsic evidence that they were made in consequence of an agreement between the parties.   When Franz Rastetter had accepted the benefits of the joint will, it would be most inequitable to permit him to retain all the advantages and ignore the obligations.

In my opinion the judgment appealed from should be reversed, and a new trial granted, with costs to appellants to abide the event.

McLAUGHLIN and LAUGHLIN, JJ., concur.

CLARKE, J.   The complaint alleges that prior to September 4, 1902, Franz Rastetter and Elizabetha Rastetter were husband and wife; that, on or about said day, they made and executed a paper purporting to be their last will and testament, as follows:

"In the name of God amen.   We, Franz Rastetter and Elizabetha Rastetter, his wife, of the borough of Manhattan, city of New York, being of sound mind and memory and mindful of the uncertainty of human life, do now make, publish and declare this and this only to be our last mutual and joint will and testament in manner following, viz.:

"First. We order and direct our executor or executrix as the case may be, to pay all our just debts and funeral expenses out of our personal property.

"Second. We give unto the survivor of either of us, the income of our real and personal property, during his or her natural life for his or her own use and benefit.

"Third. After the death of the survivor of either of us, all our property both real and personal shall, be divided in the manner following:   One-half thereof is to be paid to our daughter Barbara Schmidt, if living at the time of the

distribution of the estate, and if not living at the time of the distribution of the estate, her share shall be equally divided between her children then living, and the remaining one-half thereof, to our son John Rastetter if living at the time of the distribution of the estate, and if not living, same shall be equally divided between his children then living. We hereby nominate, constitute and appoint the survivor of either of us, executor or executrix, as the case may be, of this our mutual and joint will and testament. Giving the said executor or executrix as the case may be full power to sell any real estate either owned jointly or severally, at public auction or private sale, which he or she may think most advantageous to the estate, with the power to reinvest said money in by purchasing real estate or investing same on mortgage on New York City real estate, with the power to mortgage or lease any real estate owned by us either jointly or severally. Hereby revoking all other and former wills by us at any time heretofore made, we again declare this and this only, to be our last mutual and joint will and testament.

"In witness whereof we have hereunto set our hands and seals this 4th day of September, 1902."

The complaint further alleges that Elizabetha died January 4, 1905, leaving, her surviving, her husband and John and Barbara, her son and daughter; that on March 29, 1905, the aforesaid mutual and joint will was duly admitted to probate upon the petition of Franz, to whom letters testamentary were issued, and who qualified as executor and continued to act as such until his death; that Franz, by applying and petitioning for the probate of the aforesaid will and causing the same to be admitted to probate and accepting the terms of said will and the benefits thereunder became and was barred from thereafter making any new, separate, or individual last will and testament, was unable to and lost the right to revoke, change, or modify any of the terms, bequests, or provisions of the said joint, mutual, and reciprocal will so admitted to probate, or make any disposition of the property or estate owned by him and his deceased wife, at the time of her death, other than provided for in the same, and his status in and to the property so owned by them at the time was fixed and regulated, and its terms, bequests, provisions, and obligations could not be impaired, changed, modified, revoked, or avoided by subsequent testamentary provision or designation on the part of the survivor, who thereby became bound and obligated to carry out the terms and conditions thereof as therein provided and in the manner therein provided.

The complaint further alleges: That at the time of the death of Elizabetha she and her husband owned the real estate 530 and 534 East Eighty-Third street in fee simple. That she and her husband were possessed and the owners of and had deposited in a bank or in banks, and in their possession, or invested, certain moneys, their property, which was subject to the conditions and provisions of the aforesaid will and was part and parcel of the property therein mentioned. That Franz thereafter invested such moneys in various ways. That he thereafter received the rents, income, and profits of the aforesaid real estate and drew and received moneys on deposit in banks, or invested and received moneys belonging to the said Franz and Elizabetha, and which was subject to the conditions and terms of their mutual will aforesaid, which he invested in and with which he purchased the real estate more particularly mentioned and described as follows:

(Describing a lot on Marion avenue in the Bronx). That he purchased said premises from George D. Kingston and Mary, his wife, on or about September 17, 1906, but took the deed to the said property in the name of the defendant Barbara Schmidt, with the intent and for the purpose of making gift thereof to the defendant Barbara Schmidt and thereby avoiding the conditions, provisions, and terms of the joint, mutual, and reciprocal will made by him and his wife, and with the intent and for the purpose of benefiting said defendant Barbara Schmidt in excess of the share she would receive under the terms of the aforesaid joint, mutual, and reciprocal will, and with the intent and for the purpose of depriving the other beneficiaries of their just part and share and decreasing the amount which they were justly entitled to receive thereunder. That the last-mentioned real estate was purchased with money which came from the estate of said Franz and Elizabetha, and which was controlled by and subject to the terms, conditions, and provisions of their joint, mutual, and reciprocal will, and which the said Franz was in justice and in law bound to apply as therein provided thereby. That the gift to the defendant Barbara and the taking of the real estate in her name was a fraud upon the other beneficiaries, was a deviation of the estate, or a part thereof, for a purpose neither mentioned nor contemplated by the terms thereof, and was fraudulent, null, and void, and that Barbara knew of the terms of said will and connived at such fraud. That Franz died August 27, 1908, leaving a will dated August 1, 1907. That in this will he gave to his daughter, Barbara Schmidt, one-half of all his real and personal property, to his executors all the rest, residue, and remainder in trust to invest and to apply such part of the income as in their discretion they shall from time to time deem fit and proper, to the use of the children of his son John Rastetter, deceased, until John shall have arrived at his thirtieth year.

Should John, his grandson, die before reaching his thirtieth year of age, then until Christian, the son of his son John, deceased, should have arrived at the age of 30, and to apply the balance of said net income during the continuance of the aforesaid trust to the use of his beloved daughter, Barbara, and in the event of her death before the termination of the aforesaid trust, then to her lawful issue. Upon the termination of the trust he directed his trustees to sell all the property constituting the trust res and to divide the proceeds equally among all the children of his son John, deceased, living at the time of the division of said trust res, and the issue of such of them as may have died before that time per stirpes, however, and not per capita. The complaint further alleges that John, the son of the said Franz Rastetter, died on or about January 2, 1907, intestate, leaving him surviving his widow, Amelia, and five children running from nine to four years of age as his only children and heirs at law.

This action is brought by the said children of John Rastetter, grandchildren of Franz and Elizabetha, by their guardian ad litem, and judgment is demanded that the said mutual will be declared valid and binding upon the estate of Elizabetha and Franz and upon the defendants and upon all other persons mentioned in and benefited

by said will, and that said mutual will be carried out and executed in all respects in reference to the contents and provisions therein contained so far as these infant plaintiffs are concerned; that the will of Franz be declared inoperative; that the defendant executor and trustee render an account of all property received under the will of Franz Rastetter and deliver up all such property to a receiver or such other persons as the court may appoint; that the deed to the defendant Barbara Schmidt be declared to have been taken by Franz Rastetter with money that was subject to the mutual will and such property be declared to be a part of the estate; that Barbara Schmidt be directed to convey to said receiver; and that an injunction issue.

Answers were interposed and replies thereto, and the case came on for trial at the Special Term. Whereupon the defendants moved to dismiss the complaint:

"On the ground that there is no allegation in the complaint that, before the making of the instrument referred to, * * * Franz and Elizabetha Rastetter entered into an agreement to make such mutual or joint wills, and never to revoke the same; and the further ground that the mere making and execution of the instrument referred to is not sufficient evidence to show an agreement between Franz and Elizabetha that would rob the will of its revocable character."

Thereafter an adjournment seems to have been taken for some days. On reconvening the court said:

"There is no allegation of the existence of any agreement prior to the execution of the will in question which might be said to be the basis of the will itself, or what the will might be said to be a supplement of and in fulfillment of a pre-existing agreement. I understand, too, from what has been said by the counsel for the plaintiff, that there is no intention to amend the complaint by alleging said agreement, nor is there any intention to offer any proof of the existence of any such agreement as a separate fact, and the position of the plaintiffs is that the nature of the will is such that it imports all those allegations which I find not to be expressed and of which there is no intention to offer proof."

Whereupon the complaint was dismissed, and the plaintiffs appeal. The leading case in this state is Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265. That was a case, not of a joint will, but of reciprocal wills made by two sisters upon the same day, before the same witnesses and identical in their cross-provisions. One having died, the other made a subsequent will, and the beneficiary under the first will brought the action. Judge Gray said:

"The theory of the action, as shown in the complaint, was that the will, whose provisions are sought to be made binding upon Mary Edson's estate, had been made in pursuance of a contract between her and her sister Susan, who predeceased her; whereby each had agreed with the other to make and execute her will and to dispose thereby of her estate in a certain manner. * * * Now it was essential for the plaintiff to make out by clear proof that the two sisters had made the agreement, under which he asserted his rights to equitable relief; for, otherwise, as will be noticed hereafter, he would be in no position to claim that Mary's legatees and legal representatives under her subsequent will were bound, in a trust capacity, to apply the property received by them to the purposes of that original agreement. The argument of the appellant is, not that Mary, by such an agreement, had incapacitated herself from making another will, but that her estate and her legal representatives were bound by an antecedent obligation assumed by her,

namely, a contract entered into with her sister, Susan. * * * I know of no absolute rule of law, which impresses upon wills, similar in their cross-provisions, that mutual character, by force of which the survivor's estate comes under a trust obligation. I understand that something more is needed to warrant equitable intervention, and, in the absence of an express agreement, that it must be found in circumstances, which so surround the transaction as, imperatively, to compel the conclusion that the parties intended and undertook to bind themselves and their estates, irrevocably, in the event of the prior death of one. * * * I fully concede that there is no reason in law, nor any public policy, which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills; which, though remaining revocable upon notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations; of which equity will assume the enforcement, if attempted to be impaired by subsequent testamentary provisions on the part of the survivor. * * *

"A court of equity would, in such an event, proceed upon the ground that the survivor was bound, not merely in honor, but by his agreement and by the acceptance of the benefit, which that agreement procured for him. * * * But, equally, would it be the duty of a court of equity to refuse that relief, where the agreement sought to be given effect was not certain and definite. * * * It is not essential to the intervention of equity, in order to prevent the accomplishment of fraud, that an agreement should be established by direct evidence. It may be established from such facts and circumstances as will raise an implication that it was made; and may have reinforcement from the evidence of the conduct of the parties, at the time and subsequently. But, concerning as it does the statutory right of a person to dispose of his property after his death by a last will, the court should refuse to interfere; unless the agreement, depended upon for the award of the relief demanded, has been clearly and definitely established. * * * A general maxim, which equity recognizes, is that a testator's will is ambulatory until his death. It is a disposition of property, which neither can, nor is supposed to, take effect until after death. I think it needs no further argument to show that to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof. * * * The contention of the appellant goes so far as to claim that the wills on their face show an agreement, and judicial support is sought for it in Lord Camden's judgment in Dufour v. Pereira, 1 Dick. 419, which is the subject of extended and learned comment by Mr. Hargrave in his Juridical Arguments (volume 2, p. 277). In that case, however, the will was in an instrument which was jointly executed by husband and wife, and, while not a conclusive, it was a very material, circumstance to be considered. In the case of Lord Walpole v. Lord Orford, * * * Lord Chancellor Loughborough had occasion to refer to, and to review, the decision in Dufour v. Pereira, in which case he had taken part as counsel. He said that the will, jointly executed by husband and wife in that case, was considered by the court, not as the wife's will, but as her contract with her husband for a valuable consideration, and that, when she survived and had accepted its terms, she bound herself to the conditions under which all the property was given by the husband's will. She and her husband were foreigners, acting under the idea of a foreign law that she had no separate property, and had made their mutual engagements by a mutual will, * * * and he refused to be bound by it as an authority."

The doctrines of this case have been applied in the following cases: Everdell v. Hill, 27 Misc. Rep. 285, 58 N. Y. Supp. 447, was an action to establish and enforce a mutual agreement alleged to have been entered into by three sisters respecting the disposition of their several estates. The complaint clearly and affirmatively alleged that they entered into a mutual, verbal agreement with each other some time in the early part of the year 1881, or prior thereto, whereby they

each with the other interchangeably agreed to make and leave last wills and testaments and reciting the provisions to be inserted therein. Mr. Justice Scott, before whom the case was tried, said:

"The enforcement of such an agreement interferes to some extent with the statutory freedom of a person to dispose of his property after his death by a last will, and the courts will refuse to interfere unless the agreement sought to be enforced is clearly and definitely established by full and satisfactory proof. In this class of cases the ordinary rules which control in actions to compel the specific performance of contracts, and which are designed to furnish reasonable safeguards against fraud, should be rigidly applied. These rules require the contract to be certain and definite in all its parts, that it be mutual and founded upon an adequate consideration, and that it be established by the clearest and most convincing evidence. * * * Weighing the evidence in this case by the strict rules above stated, I am unable to escape the conviction that the plaintiffs have successfully established the agreement set forth in their complaint. * * * The evidence of the agreement is found in numerous declarations made by all of the sisters to different persons, corroborated by wills actually made by them in the year 1881. That some agreement was made between them as to the disposition of their property seems to be beyond question. * * * That the agreement between the sisters was made as alleged in the complaint, I have no doubt, Matilda and Catherine loyally performed their parts of it. Mary received all the benefits which the agreement secured to her, and thus debarred her from disposing of her property otherwise than in accordance with her agreement. * * * This is not an action to establish a will, but to enforce an agreement to make a will in a certain way."

In Herrick v. Snyder, 27 Misc. Rep. 462, 59 N. Y. Supp. 229, a similar question came before Mr. Justice Hiscock, who said:

"There is no need to discuss the general proposition of law that courts will sustain and enforce an agreement for mutual wills, when found to exist, or that there need not be direct proof of an express agreement, but that the same, like any other contract, may be found from circumstances. The courts, however, have established the rule that such an agreement must be very convincingly proved. * * * I do not feel that the alleged agreement urged by some of the defendants in this case has been established with any such rule of certainty as above indicated."

In the case at bar we have, not two independent testamentary documents containing similar provisions, but one instrument signed and sealed by both parties, which from first to last speaks jointly and mutually:

"We do now make, publish and declare this and this only to be our last, mutual and joint will and testament."

And the question is: When such an instrument, executed under seal by both parties, is under consideration, were plaintiffs required to allege and prove a prior agreement to do that which they have done? The appellants answer: No, it is not necessary tò allege or prove that they agreed to make a joint and mutual will, because that is proved by the document itself which they executed, and they must be held to have intended and agreed to do that which they did do. But a will being ambulatory, there exists an absolute right of revocation. To read into this will what is not expressed upon its face, an agreement not to exercise the statutory right to revoke the same, is what the Court of Appeals, in Edson v. Parsons, said cannot be done. As I understand that case, it holds that such an agreement to

deprive the parties thereto of their statutory right of revocation must be proved de. hors the will itself. Under that case such an agreement may be found from all the facts and circumstances surrounding the transaction and the mutual relation of the parties; but such an agreement must be found as a matter of fact. In that extremely strong case, where the trial court refused to find that the agreement had been made, although it would seem that the natural inferences would have supported a contrary finding, the Court of Appeals affirmed upon the ground that it was a question of fact, and it could not say the conclusion arrived at was not supported by the evidence.

In this case we have no facts and circumstances, other than the will itself, and by the admission of counsel plaintiffs cannot amend or offer any proof of the existence of any such agreement as a separate fact, and therefore it seems to me we are governed by the words of Judge Gray:

"I think it needs no further argument to show that to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof."

It follows therefore that upon this record the judgment below should be affirmed, with costs and disbursements to the respondents.

INGRAHAM, P. J., concurs.