28 N.J. Super. 330 (1953)
100 A.2d 684
ADELAIDE E. MINOGUE AND WARREN E. EMLEY, JR., INDIVIDUALLY AND AS ONE OF THE EXECUTORS OF THE WILL OF WARREN E. EMLEY, SR., DECEASED, PLAINTIFFS-RESPONDENTS,
v.
MARY IDA LIPMAN AND HERBERT D. BROWN, INDIVIDUALLY AND AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF MARY L.W. EMLEY, DECEASED, BETTY ANN BROWN AND JOHN N. BROWN, AND HERBERT D. BROWN AS ONE OF THE EXECUTORS OF THE WILL OF WARREN E. EMLEY, SR., DECEASED, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1953.
Decided November 19, 1953.
*331 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. George E. Beach, of the Ohio Bar, argued the cause for the plaintiffs-respondents (Messrs. Minton, Dinsmore & Lane, attorneys; Mr. B. Braddock Dinsmore, Jr., of counsel).
Mr. Samuel D. Hoffman argued the cause for the defendants-appellants (Mr. Charles D. Hodgins, of counsel).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The defendants appeal from the judgment entered in the Superior Court, Chancery Division, in favor of the plaintiffs and against the defendants in a matter wherein plaintiffs sought to establish that Warren E. Emley, Sr. and Mary L.W. Emley, his wife, now both deceased, executed mutual, reciprocal and irrevocable wills in accordance with an agreement between them, and adjudging that Mrs. Emley's will, dated December 22, 1950, be given effect, impressing a trust upon certain real property of which Mrs. Emley died seized, appointing a trustee to administer the assets of Mrs. Emley's estate and restraining defendants from selling or otherwise disposing of such assets of Mrs. Emley's estate.
We proceed with the recital of the pertinent facts, viz.:
Warren E. Emley, Sr., a widower, married Mary L.W. Brown, a widow, on August 18, 1945. By his former marriage Mr. Emley was the father of the individual plaintiffs herein, and by her former marriage Mrs. Emley was the mother of the individual defendants herein.
Prior to her marriage to Mr. Emley, Mrs. Emley was the owner of a house and lot used as a summer dwelling, situate at Roscoe, New York, and in 1946, following their marriage, *332 Mr. and Mrs. Emley purchased a home in Highland Park, New Jersey, each paying approximately one-half of the purchase price thereof and taking title in their names as tenants by the entirety.
Mr. and Mrs. Emley, out of separate funds, each contributed toward the cost of repairing and remodelling the Highland Park residence, Mr. Emley contributing the major portion according to the record. Both parties also contributed toward the maintenance of the Roscoe, New York house, but their proportionate share is unknown.
In 1950 Mr. Emley, approximately 65 years of age, appeared to be in good health, and Mrs. Emley, somewhat younger of the two, was known to be suffering from cancer. On December 22, 1950 Mr. and Mrs. Emley, by appointment, called at the office of George R. Morrison, Esquire, an attorney-at-law of the State of New Jersey, for the purpose of preparing and executing their respective wills. It appears that Mr. Emley gave Mr. Morrison the instructions for the preparation of both wills as follows: (1) each testator was to devise his interest in the Roscoe property in the proportions of 20% to the children of Mr. Emley and 80% to the children of Mrs. Emley; (2) each testator was to devise his interest in the Highland Park property in the proportions of 70% to the children of Mr. Emley and 30% to the children of Mrs. Emley, and (3) the remainder of each testator's estate was to go to the surviving spouse for life, or until remarriage, and then to the children of the testator in each case, in fee.
The record discloses that Mr. Morrison then directed the parties' attention to the fact that Mr. Emley possessed no interest in the Roscoe property which could be presently disposed of by his will, and that the Highland Park property was held jointly by them as tenants by the entirety and, upon the death of one of them, title would vest in the survivor by operation of law. By way of reply Mr. Emley stated: "That will be taken care of." Mr. Morrison queried Mrs. Emley to determine whether or not that was the way she wanted it, to which she replied: "That is the way he wants it, so *333 what can I do." The wills were prepared in accordance with the instructions, were carefully read by the testators and then duly executed.
At this point, we think it may be well to indicate the relationship of the scrivener of the wills, Mr. George R. Morrison, and his knowledge of the background of the decedents. Mr. Morrison was familiar with the history and facts regarding the title to the Roscoe, New York property. He represented Mrs. Emley in the administration of her first husband's estate and represented the Emleys when they purchased the Highland Park, New Jersey property, to which they took title as tenants by the entirety. As mentioned, he drew the reciprocal wills which were executed and attested in his presence. He has acted as attorney for the executors under Mr. Emley's will and on June 7, 1951, on the day of the funeral services for Mr. Emley, pursuant to instructions telephoned to him from Mrs. Emley, he prepared her new will revoking the prior reciprocal will, although he did not supervise or attend the execution of the new will. Mr. Morrison acted as attorney for the executors under Mrs. Emley's will.
Mr. Emley died on June 5, 1951, and his will dated December 22, 1950 was duly probated. As indicated hereinabove, Mrs. Emley called Mr. Morrison, requesting him to prepare a new will wherein she would leave her entire estate to her children by her former marriage. Mr. Morrison prepared the new will and Mrs. Emley executed it on June 7, 1951.
Mrs. Emley died on February 1, 1952, her will of June 7, 1951 being subsequently probated. Pursuant to the terms of this last-mentioned will, title to the Roscoe property and the Highland Park property became vested in the defendants (children of Mrs. Emley), as tenants in common.
Thereafter, on April 17, 1952, plaintiffs instituted this suit against the defendants for the aforementioned relief, and at the conclusion of the matter the trial court entered judgment in favor of the plaintiffs and against the defendants, from which judgment the defendants appeal.
*334 The defendants contend that evidence adduced at the trial does not sustain the finding by the trial court that the wills of Mr. and Mrs. Emley, dated December 22, 1950, were executed pursuant to a contract between them and that they were intended to be a final and irrevocable disposition of their respective estates; that there is no evidence of consideration for Mrs. Emley's alleged promise to vest title to the real property in the plaintiffs and defendants at her death, and that the decision of the trial court is contrary to the weight of the evidence.
The plaintiffs contend that in the circumstance of the parties it is reasonable and probable that they would mutually testate; that the unique provisions of the two wills connote the intent that the ultimate disposition of the properties was, after the death of both parties, to be "his property to his children and her property to her children"; that the subsequent conduct of the parties confirm the mutuality and irrevocability of the compact, and that combining things intrinsic to the wills with extrinsic facts and circumstances, the conclusion is inescapable that the irrevocable compact to mutually testate was broken by Mrs. Emley, calling for the exercise of the equitable relief given by the trial court.
The leading case in this State on the subject of the irrevocability of mutual wills is Tooker v. Vreeland, 92 N.J. Eq. 340 (Ch. 1921), affirmed Tooker v. Maple, 93 N.J. Eq. 224 (E. & A. 1921), where, in 92 N.J. Eq., at page 342, Vice-Chancellor Backes stated:
"The law is well settled, and the proposition is not questioned, that if Mr. and Mrs. Tooker made a compact to dispose of their combined estates, the terms of which find expression in the mutual wills, the contract will be enforced in equity according to its established practice. Equity will not interfere with the probate of the later will, made in violation of the contract, but will enforce the contract against the estate of the survivor by impressing a trust upon the assets. There is a wealth of authority for the relief and the remedy. Many of the cases are gathered by Vice Chancellor Garrison in Deseumeur v. Rondel, 76 N.J. Eq. 394. The early English cases are Dufour v. Pereira, 1 Dickens 419; 2 Hargr. Jur. Arg. 304; Lord Walpole v. Lord Orford, 3 Ves. Jr. 402. See, also, *335 for collection of cases, Stevens v. Myers, 91 Or. 114, 177 P. 37. An interesting discussion of the subject is to be found in Edson v. Parsons, 155 N.Y. 555, 50 N.E. 265. See, also, Rastetter v. Hoenninger, 151 App. Div. 853, 136 N.Y.S. 961; Hermann v. Ludwig, 186 App. Div. 287, 174 N.Y.S. 469. An early case in this state on the subject of enforcing contracts to bequeath is Johnson v. Hubbell, 10 N.J. Eq. 332, and the leading case is Duvale v. Duvale, 54 N.J. Eq. 581; Id., 56 N.J. Ey. 375. See, also, Lawrence v. Prosser, 88 N.J. Eq. 43.
That such a contract be enforceable it must be, like all other contracts specifically enforceable in equity, founded upon a valid consideration, certain and defined, equal and fair, and sufficiently proven  qualities to which Lord Loughborough said in Lord Walpole v. Lord Orford, supra, he knew no limitations."
The learned vice-chancellor thereafter examined the factual circumstances of the case and found that the testators had executed separate wills leaving each to the other a life estate and identical legacies, and the remainder to an identical group of kin of each testator; that the wills were drawn by their attorney pursuant to instructions furnished by the parties and, according to the scrivener, Mr. Tooker did most of the talking and explained that they wished to dispose of their property according to their mutual desires; that in response to inquiries as to the title holder of the property it was declared that it made no difference, they had agreed upon how the property should be devised; and that the scrivener also stated that Mrs. Tooker was emphatic she did not want to do anything that was not the way her husband wanted it.
Vice-Chancellor Backes, having considered the circumstances of the parties, stated 92 N.J. Eq., at page 345.
"From this testimony, the truth of which is not challenged, it seems to me to be clearly and satisfactorily established that the wills grew out of, not simply the mutual desire of an aged and affectionate couple to gratify the other's wishes, but a solemn promise, an agreement, a contract, to be performed by the survivor. The consideration of the contract we readily find in the inducement held out by the one to the other to mutually testate, in the reciprocal gifts of the life estates, and the principal, if necessary; and the execution of the contract on the part of Mr. Tooker, by his unrevoked will at the time of his death. And in the acceptance and the actual enjoyment of the gift by Mrs. Tooker we also find *336 that part performance which takes the oral contract out of the statute of frauds."
The holding in the Tooker case, to the effect that matters apparent on the face of the two wills, together with proof of surrounding circumstances, may be considered in establishing an agreement to make irrevocable, mutual, reciprocal wills, has acceptance in other jurisdictions. See 169 A.L.R. 73, where decisions of other jurisdictions are collated.
Turning to a consideration of the facts in the matter sub judice, we find that the testamentary instruments themselves imply a mutual and reciprocal testamentary regard. The instruments were prepared by the same scrivener, executed at the same time in the presence of each other, and it is conceded that there is no claim of lack of free exercise of the will by either testator or testatrix. Both instruments contain unique mutual and reciprocal provisions regarding the disposition of the two pieces of real estate, and each instrument gives the other a life estate in the residue of the estate which, upon the death of the surviving spouse, or remarriage, is devised to the children of each testator in shares. The instruments further provide for the same persons to be executors, one child of each testator.
The scrivener testified that the parties came to his office by appointment to execute their respective wills; that it was apparent that they had discussed the matter and knew the provisions they desired. He was acquainted with the parties and their personal histories and circumstances. He raised the question as to the right of Mr. Emley to devise an interest in realty because he had no legal title in the New York property and, title being in the parties by the entirety, he reminded them that the New Jersey property would pass by operation of law. The attorney was promptly assured that "That will be taken care of." When interrogated as to how the Emleys arrived at the "70-30" percentages for the New Brunswick property, Mr. Morrison testified that "Mr. Emley said `We have adjusted that between ourselves.'"
Mr. Morrison, the drafting attorney, was aware of the fact that the provisions of the parties' wills were calculated upon *337 the expectation of the death of Mrs. Emley prior to Mr. Emley. This assumption was both reasonable and logical under the circumstances, for it was known that Mrs. Emley was a victim of cancer and it is asserted was obviously suffering some distress on the date of the execution of the wills. On the other hand, Mr. Emley, then age 65 years, was in good health.
Considering the fact that Mrs. Emley, quite possibly, would predecease Mr. Emley and would, therefore, lose her interest or investment in the Highland Park property, it is reasonable to infer that the mutually agreeable reciprocal wills were executed to preserve for the heirs of each of the parties that interest or share which was contributed respectively by the parties.
The record reveals further that Mr. Emley, a professor of chemistry at Rutgers University, was a person of methodical habits and kept meticulous accounts of his financial transactions, even to the point of preparing annually his personal financial statements of assets, liabilities and net worth. After his marriage to Mary L.W. Brown in 1945 he continued this practice and also prepared the same sort of statements for his wife, who brought into the marriage a modest amount of property of her own.
A memorandum prepared by Mr. Emley is in evidence and indicates the expenditure of monies by Mrs. Emley from her separate assets, approximating 80% of the appraised value of the Roscoe, New York property, and 30% of the appraised value of the Highland Park, New Jersey property, and the balance, 20% and 70% respectively having been expended by Mr. Emley. At the trial there were numerous cancelled checks introduced to prove the accuracy and authenticity of this memorandum.
Considering the methodical and meticulous nature of the professor and his habit for accurate records, it appears clearly that the intent of the parties, as expressed in the language of the mutual and reciprocal wills, was the result of a plan based upon investment of the parties, with proper regard for the preservation of the assets of their combined estates for *338 the enjoyment of the survivor during his or her lifetime and the preservation of their individual assets for the enjoyment of their respective heirs upon the death of the surviving testator. It is to be noted that the educational background of Mr. and Mrs. Emley, their awareness of estate matters through personal experience of loss of their first spouse, all are an indication of more than a passing regard for the effect of their dispositions. Similarly, it is to be noted that Mary L.W. Emley was the sister of Professor Emley's first wife, and aside from the strong regard with which they held each other, it would be reasonably inferrable that the parties intended to favor their own heirs upon the death of both testators without the sting of inequitable treatment to the children of their first marriages, and this we believe to have been expressed in the wills of December 22, 1950.
The wills provide a method of convenient payment of the shares by their respective children to the children of the deceased spouse over a period of ten years at 4% interest in event that lump sum payment of that share would invoke hardship. The wills further provide for one child from each family to be executor under the wills (the same children named in both wills). All these matters we consider to be indications of an agreed scheme of testamentary disposition, mutual and reciprocal in character.
Additionally, there is testimony that shortly after the execution of the wills and during the Christmas vacation of 1950 Professor Emley and his wife visited Mrs. Adelaide Emley in Ocean City, New Jersey. Mrs. Adelaide Emley, who is the widow of Professor Emley's deceased brother, testified that on this occasion, almost immediately upon arrival at her home (in fact, before she had removed her coat), Mary L.W. Emley stated that she and her husband had just been to a lawyer, had made out their wills, had each appointed as executors one of the children from each of the families so that there would be no trouble, and she appeared to be delighted and happy about it. We further note that Professor Emley wrote letters to the executors under date of December 28, 1950 and January 15, 1951, in *339 which, among other things, he explained that he and his wife had executed new wills on December 22, 1950 and had appointed them as executors thereof, and stated that no division was to be made until both estates were settled. In point of time, these letters were written while the testamentary intent was still fresh in the professor's mind and while he was apparently still of the opinion that he would survive his wife. While these letters are not considered a part of the wills, we believe they indicate the intent of the parties at the time. Their admission into evidence was not objected to by the defendants.
The enforceability, in equity, of a compact between husband and wife, supported by sufficient consideration, to dispose of their combined estates according to terms expressed in their mutual wills has been recognized. Deseumeur v. Rondel, 76 N.J. Eq. 394 (Ch. 1909); Tooker v. Vreeland, supra; Sick v. Weigand, 123 N.J. Eq. 239 (E. & A. 1938); 57 Am. Jur., Wills, sec. 174, p. 154. And it has also been held that an agreement to be irrevocable may be express or implied from the facts and circumstances. Trust Co. of N.J. v. Greenwood Cemetery, 21 N.J. Misc. 169 (Ch. 1943). In 169 A.L.R. 46, 47 it is said:
"It is clear that an agreement not to revoke need not be express; it may be implied from statements made by the parties considered in the light of the circumstances under which they were uttered."
In summary, we conclude from a consideration of the extrinsic facts, circumstances and situation of the parties and their families, the educational background of the parties and the unique and revealing provisions of their wills, that there was sufficient proof of a compact to mutually testate and that the same was intended to be final or irrevocable. The absence of direct proof of an express agreement to so testate has been held not to be fatal to the irrevocability of such a compact. Deseumeur v. Rondel, supra; Tooker v. Vreeland, supra; Sick v. Weigand, supra; Trust Co. of N.J. v. Greenwood Cemetery, supra; Wehrle v. Pickering, 106 Colo. *340 134, 102 P.2d 737 (Sup. Ct. 1940); Hoff v. Armbruster, 125 Colo. 198, 242 P.2d 604 (Sup. Ct. 1952).
The judgment is affirmed.