NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3001-24

IN THE MATTER OF THE
ESTATE OF SAMUEL P.
HEKEMIAN, deceased.

_____

APPROVED FOR PUBLICATION

April 21, 2026

APPELLATE DIVISION

Argued January 27, 2026 – Decided April 21, 2026

Before Judges Gooden Brown, Rose and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000008-24.

Lawrence T. Neher argued the cause for appellants (Berkowitz Lichtstein Kuritsky Giasullo & Gross, LLC and Phillips Nizer LLP, attorneys for appellants/co-executors Peter S. Hekemian and Edward G. Imperatore, Esq.; Lawrence T. Neher and Eric A. Carosia, of counsel and on the joint briefs; Lindsey de Stefan, on the joint briefs).

Geoffrey D. Mueller, LLC, attorneys for appellant Edward G. Imperatore, Esq. in his individual capacity (Geoffrey Mueller and Peter Mueller, on the joint briefs).

Thomas J. Gaynor argued the cause for respondent Sandra Hekemian (Smith & Gaynor, LLC, attorneys; Thomas J. Gaynor, on the brief).

Richard S. Mazawey argued the cause for respondent Richard E. Hekemian (Mazawey Law Firm LLC,

attorneys, join in the brief of respondent Sandra Hekemian).

The opinion of the court was delivered by

ROSE, J.A.D.

This appeal requires us to squarely decide, as a matter of first impression, the validity of an arbitration provision contained in a testamentary instrument. The provision was set forth in Article Seventeenth of the August 27, 2002 last will and testament (2002 LWT) of Samuel P. Hekemian, who died testate in August 2018, survived by his wife, Sandra and their four sons, Peter, Jeffrey, Mark, and Richard.[1]  In the 2002 LWT, Samuel appointed his son, Peter, and longtime friend and advisor, Edward G. Imperatore, Esq. (together, appellants), co-executors of the will and co-trustees of the three testamentary trusts established therein.

This is the second time appellants appear before us challenging the 2002 LWT's arbitration provision.  We previously affirmed, in an unpublished opinion, a Chancery court order denying appellants' motion to compel arbitration under the 2002 LWT.  In re Est. of Hekemian, No. A-1774-21 (App.

---

[1]  Because the parties share the same surname, we use first names to avoid confusion.  No disrespect is intended.  Jeffrey and Mark are not parties to this matter.

A-3001-24

Div. Jan. 13, 2023) (slip op. at 17).[2]  At that time, we were not persuaded Richard's request for a formal accounting under Rule 4:87-1 and N.J.S.A. 3B:17-2, constituted a dispute triggering the arbitration provision.  Id. at 18.  We also recognized Richard had not received a distribution or loan under the 2002 LWT.  Id. at 25-26.  Unlike the present matter, Sandra was not a party to the prior action.

Although we made certain observations about the viability of the arbitration provision, we did not – because we needed not – expressly decide whether the provision was valid and enforceable under New Jersey law.  Id. at 32.  We nonetheless recognized "arbitration clauses that eliminate the courts' expected role in resolving will disputes are inconsistent with the detailed statutory scheme vesting the superior courts with the authority to adjudicate such issues."  Ibid.

---

[2] Although citing an unpublished opinion generally is forbidden, we do so here to provide a full understanding of the issues presented and pursuant to the exception in Rule 1:36-3, permitting citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law."  Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012) (quoting R. 1:36-3) (permitting citation to unpublished opinions, including a prior related opinion, because the citation satisfied "the 'any other similar principle of law' exception"), aff'd, 220 N.J. 544 (2015).

A-3001-24

Shortly after we issued our opinion, Sandra joined the action. Unlike Richard, Sandra has received distributions under the 2002 LWT. After the parties engaged in informal discovery, appellants filed a verified complaint for the settlement of their first intermediate accounting of Samuel's estate. In their complaint, appellants reserved the right to move to compel arbitration pursuant to the 2002 LWT's arbitration provision. Sandra, joined by Richard (together, respondents), filed exceptions to appellants' accounting. True to their word, appellants moved to compel arbitration. The prior Chancery judge having retired, the successor judge heard arguments on the motion. On May 14, 2025, the judge issued an oral decision and memorializing order denying appellants' motion.

In his decision denying the motion, the Chancery judge found respondents' exceptions constituted a dispute under the arbitration provision. However, the judge found the identical arbitration provision contained in Sandra's 2001 last will and testament, "at most," addressed the provision's mutual assent requirement between Sandra and Samuel, not between Richard and Samuel. The judge further found Sandra's receipt of distributions under the 2002 LWT "potentially invok[ed]" the equitable estoppel doctrine. Because the record lacked any evidence of mutual assent between Richard and Samuel, and Richard

4

had not yet received a benefit under the 2002 LWT, the judge declined to compel Richard's dispute to arbitration. Finding Sandra's and Richard's claims "exactly the same," the judge was persuaded bifurcation of their disputes was not in the interest of judicial economy. Accordingly, the judge denied the motion in its entirety.

Before us, appellants agree with the judge's finding that the exceptions filed by respondents created a dispute triggering the arbitration provision at issue. Appellants instead primarily argue: the provision is "valid, enforceable, and irrevocable" pursuant to the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36; Sandra agreed to arbitrate all disputes under the 2002 LWT evidenced by Sandra's and Samuel's execution of "reciprocal" wills in 2001 (2001 LWTs), containing the same arbitration provision; Richard can be compelled to arbitrate as a third-party beneficiary under the testamentary trusts; the judge failed to consider appellants' detrimental reliance on the 2002 LWT's arbitration clause; and Samuel's testamentary intent demands resolution of any dispute under the 2002 LWT in an arbitral forum.[3]

---

[3] In light of the issues raised on this appeal, we find it unnecessary to chronicle the protracted, ongoing litigation concerning Samuel's estate. Suffice it to say, after the present appeal was filed, this court granted appellants' motion to supplement the record with the Chancery court's July 23, 2025 final judgment

Unpersuaded by appellants' contentions, we expressly hold the arbitration provision set forth in the 2002 LWT fails for lack of mutual assent to the arbitral forum between Samuel and Sandra, Richard, and all interested parties, and is contrary to this State's statutory scheme governing the Administration of Estates of Decedents and Others Act, N.J.S.A. 3B:1-1 to :29-1 (Probate Code).  We decline to consider appellants' remaining contentions.  Pursuant to our de novo review of a court's order on a motion to compel arbitration, see Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020), we affirm the May 14, 2025 order under review.  However, we do so for slightly different reasons than the Chancery judge.  See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (permitting an appellate court to affirm for other reasons because "appeals are taken from orders and judgments and not from opinions").

---

and the July 18, 2025 transcript of the court's oral decision following a bench trial on Richard's complaint against Peter "regarding the management and operations of family real estate entities."  This court granted the motion "without prejudice to the merits panel's right to disregard the supplemental material."  The materials are included in appellants' reply appendix and are not pertinent to our resolution of the present appeal.  We note only the trial judge was the same Chancery judge who decided the present motion.  In addition, in July 2025, the Chancery judge granted appellants' application to stay the motions filed by Sandra and Richard to remove appellants as co-executors and "compel mandatory income distributions to Sandra."

A-3001-24

I.

The facts at issue on this appeal are briefly stated and largely undisputed. On March 16, 2001, Samuel and Sandra executed the 2001 LWTs, which were substantially similar and prepared by the same New York attorney. Other than appointing different executors and trustees,[4] Samuel and Sandra created the same three testamentary trusts, bequeathed their assets pursuant to an identical dispositive scheme, and declared, in Article Sixteenth, all disputes arising under the 2001 LWTs be decided in an arbitral forum.

The following year, on August 27, 2002, Samuel revoked his 2001 LWT and executed the 2002 LWT.[5] Drafted by the same law firm as the 2001 LWTs, Samuel's 2002 LWT contains the identical arbitration provision set forth in the 2001 LWTs. Article Seventeeth states, in full:

> Any dispute regarding the interpretation [of] this Will and the trusts created hereunder, or arising out of administration by the executors and/or others acting hereunder in a fiduciary or other capacity, shall be submitted for settlement by arbitration, in the following manner:

---

[4] Samuel appointed Peter, Jeffrey, and Imperatore as co-executors of his estate and co-trustees of three testamentary trusts; Sandra appointed Samuel as her executor, and Samuel, Peter and Jeffrey as co-trustees of the same testamentary trusts.

[5] Respondents assert, without citation to the record, Sandra revoked her 2001 LWT.

(A) Any interested party may initiate arbitration by giving written notice by certified mail to the executors and/or trustees of the intention to arbitrate the dispute.  Such notice shall explain the nature of the dispute and any remedy or remedies sought.  If the party initiating such arbitration and the executors and/or trustees shall be unable to agree upon a single arbitrator within sixty (60) days of the mailing of the notice to arbitrate, each of them may designate his or her own arbitrator (with the executors and/or trustees to designate one and only one arbitrator for the executors and/or trustees, collectively), none of whom shall be an interested party hereunder.  All such designated arbitrators shall then meet and decide upon a single, mutually acceptable arbitrator to resolve the dispute serving as sole arbitrator thereof.

(B) The arbitrator shall decide the dispute by applying the substantive law of the State of New Jersey.  Procedures for the arbitration shall be established by agreement of the interested parties, or in the absence of such an agreement by the arbitrator.  The decision of the arbitrator shall be final and binding upon all interested parties and shall not be appealable to any court of law.  Costs of the arbitration shall be paid from such trust, or assessed against the parties as may be determined by the arbitrator, as part of the decision.

(C) Arbitration shall be the exclusive remedy for resolving disputes concerning this Will and the trusts created hereunder, including but not limited to the administration of the Will and such trusts; provided, however, that an interested party may bring an action at law or equity to enforce any decision and/or award of an arbitrator hereunder.

[(Emphasis added).]

In September 2018, appellants admitted to probate the 2002 LWT without contest. Sandra thereafter received distributions pursuant to the trusts created under the 2002 LWT. Although Richard requested "a distribution or loan from the trusts," Hekemian, slip op. at 5, he has not received a distribution under the 2002 LWT.

## II.

In our de novo review of a court's order on a motion to compel arbitration, "we are mindful of the strong preference to enforce arbitration agreements." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). "That preference, however, is not boundless." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 495 (App. Div. 2021) (citing Hirsch, 215 N.J. at 187).

Our courts have long recognized, although New Jersey's public policy "favor[s] arbitration as a means of settling disputes which otherwise would go to court," Cohen v. Allstate Ins. Co., 231 N.J. Super. 97, 100-01 (App. Div. 1989) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 390 (1985)), "it is equally true that the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement," id. at 101 (citing In re Arb. Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 228-29 (1979)). See also Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015).

A-3001-24

Accordingly, "When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen, 468 N.J. Super. at 497 (citing Martindale v. Sandvik, Inc., 173 N.J. 76, 83 (2002)). The first inquiry is implicated in the present matter.

Under the first prong, "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014) (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)); see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019) ("As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered.").

"Moreover, because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Atalese, 219 N.J. at 442-43 (quoting Foulke, 421 N.J. Super. at 425). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights," id. at 444, but the arbitration clause

must explain the party is relinquishing the right to pursue a claim in court, id. at 447. "[T]he point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Id. at 444 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)). Thus, unless the parties have agreed to arbitrate their claims, and knowingly waived their right to present their claims in court, they are not required to do so. See id. at 442.

A.

In our prior opinion, we determined, as to Richard's circumstances, "[t]he arbitration clause in Article Seventeenth was not the product of mutual assent under traditional contract principles." Hekemian, slip op. at 17. We were persuaded as "a unilateral disposition of property," a will "does not require 'a meeting of the minds' to be effective." Ibid. (first quoting Fid. Union Tr. Co. v. Price, 18 N.J. Super. 578, 589 (Ch. Div.), rev'd on other grounds, 11 N.J. 90 (1952); then quoting Kernahan, 236 N.J. at 319). We further recognized, "Critically, Article Seventeenth does not 'accomplish a clear and unambiguous waiver of rights' because it fails to explain that [Richard] is relinquishing his right to bring a claim in court." Id. at 18 (quoting Atalese, 219 N.J. at 444).

11

We discern no basis to depart from our prior conclusion that Richard neither assented to arbitrate his disputes concerning the administration of the 2002 LWT, nor waived his right to pursue his disputes in court. For the following reasons, we further hold, although a meeting of the minds is not required for the disposition of the testator's property under a will, when interested parties dispute that disposition, they cannot be compelled to arbitrate their disputes, notwithstanding the testator's intent.

With our holding in view, we turn to the arbitrability of Sandra's exceptions to appellants' accounting. Appellants maintain Samuel and Sandra mutually assented to arbitrate disputes under the surviving spouse's will, evidenced by their simultaneous execution of the "reciprocal" 2001 LWTs, prepared by the same attorney. To support their assertion, appellants cite our decision in Minogue v. Lipman, 28 N.J. Super. 330, 332 (App. Div. 1953).

In Minogue, the testators were spouses with children from prior marriages. Id. at 331. The spouses executed wills with mutual reciprocal clauses in the presence of each other and the same drafting attorney. Id. at 332-33. In their wills, the spouses devised real property acquired before and after their marriage pursuant to the same percentages. Id. at 331-32. After the husband died, the wife revoked her prior will and made a new will, leaving her estate exclusively

to the children from her prior marriage.  Id. at 333.  Following trial, the Chancery court determined the spouses' original wills were "mutual, reciprocal, and irrevocable."  Id. at 331.

We affirmed.  Id. at 339-40.  Noting the particular extrinsic facts and circumstances, including the parties' situations "and the unique and revealing provisions in their wills," we reasoned "there was sufficient proof of a compact to mutually testate and that the same was intended to be final or irrevocable."  Id. at 339.  Notably, however, the wills did not contain arbitration clauses.  We concluded, "The absence of direct proof of an express agreement to so testate has been held not to be fatal to the irrevocability of such a compact."  Ibid.; see also Tooker v. Vreeland, 92 N.J. Eq. 340, 342 (Ch.) (holding an agreement between testators will be enforced in equity against the survivor's estate "by impressing a trust upon the assets"), aff'd o.b., sub nom., Tooker v. Maple, 93 N.J. Eq. 244 (E. & A. 1921).

Respondents counter appellants' reliance on Minogue is misplaced because our decision predated the enactment of N.J.S.A. 3B:1-4,[6] which provides, in full:

---

[6] Initially enacted as N.J.S.A. 3A:2A-19 on February 23, 1978, the statute was redesignated as N.J.S.A. 3B:1-4 on May 1, 1982.

A <u>contract</u> to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after September 1, 1978, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. <u>The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.</u>

[(Emphasis added).]

Respondents correctly contend Samuel and Sandra "did not enter into any form of contractual arrangement described in N.J.S.A. 3B:1-4." The issue presented here, however, is the validity of the arbitration provision contained <u>within</u> the 2001 LWTs and 2002 LWT; not whether those testamentary instruments "create[d] a presumption of a contract to revoke or not revoke the will or wills" under N.J.S.A. 3B:1-4. There is no evidence in the record Sandra challenged the 2002 LWT's validity or sought to revoke that instrument – or her 2001 LWT. Instead, as the Chancery judge correctly found, "Sandra has received substantial distributions" under the 2002 LWT. Further, as we recognized in our prior opinion, "the Legislature did not intend to impose the technical requirements of contract formation upon the creation of 'valid, enforceable' arbitration provisions as defined by N.J.S.A. 2A:23B-6(a)." <u>Hekemian</u>, slip op. at 14-15.

14

However, even if Article Seventeeth satisfies the NJAA's formation requirement, we are not convinced the inclusion of the same provision in Sandra's 2001 LWT conclusively evinces her informed assent to arbitrate her disputes. Just as we previously determined Article Seventeenth "fails to explain that [Richard] is relinquishing his right to bring a claim in court," id. at 18, we now similarly conclude the arbitration provision does not explain Sandra – or any other interested party under the 2002 LWT – relinquishes the right to pursue a claim in court, see Atalese, 219 N.J. at 447. Stated another way, although Article Seventeeth provides "[a]rbitration shall be the exclusive remedy for resolving disputes" under the 2002 LWT, the provision fails to adequately explain the interested parties "waiv[e] their time-honored right to sue" pursuant to Atalese's concern. 219 N.J. at 444 (quoting Garfinkel, 168 N.J. at 132).

Appellants' reliance on our decision in County of Passaic v. Horizon Healthcare Services, Inc., 474 N.J. Super. 498 (App. Div. 2023), does not persuade us otherwise. In that case, the parties had a seventeen-year business relationship during which they negotiated several contracts with the assistance of counsel. Id. at 504. Both parties "understood the difference between the right to seek relief in a court of law and being relegated to arbitration under [the governing] commercial rules." Ibid. We concluded, "[A]n express waiver of

the right to seek relief in a court of law to the degree required by <u>Atalese</u> is unnecessary when parties to a commercial contract are sophisticated and possess comparatively equal bargaining power." <u>Ibid.</u>

By contrast, in the present matter, we are not satisfied the interested parties under the arbitration agreement are the types of parties we deemed sophisticated in <u>County of Passaic</u>. Although Sandra and Samuel were represented by the same attorney, the record is silent as to any evidence detailing their understanding that they or the interested parties relinquished their right to pursue their claims under the 2002 LWT in Superior Court.

Critically, in view of the unilateral nature of the testamentary instrument, none of the interested parties, including Richard, were afforded the opportunity to consider or elect to waive their right to proceed in court. Indeed, because it is nestled in a testamentary instrument, Article Seventeeth is not a typical arbitration provision. And "[a] will is not a contract; it is a unilateral disposition of property." <u>Fid. Union</u>, 18 N.J. Super. at 589. Similar to Richard, Sandra did not agree to waive her right to pursue her disputes in court under the 2002 LWT. Accordingly, we cannot conclude any interested parties to the 2002 LWT agreed to arbitrate their claims and knowingly waived their right to pursue their disputes in court. <u>See</u> <u>Atalese</u>, 219 N.J. at 442. Because we hold Article Seventeenth

16

does not bind respondents – or any interested parties – we decline to determine whether respondents' exceptions to appellants' accounting constituted a dispute, triggering the arbitration provision.

B.

By invalidating arbitration provisions in testamentary instruments, we appreciate "the NJAA neither expressly includes nor excludes wills from its purview," Hekemian, slip op. at 29, and our Legislature has not codified the enforceability of arbitration clauses in wills and trusts. Nonetheless, our conclusion finds support in the statutory scheme promulgated under the Probate Code, mandating court oversight in resolving will disputes and related matters.

In particular, pursuant to N.J.S.A. 3B:2-2, the Superior Court is granted "full authority to hear and determine all controversies respecting wills, trusts[,] and estates, and full authority over the accounts of fiduciaries, and also authority over all other matters and things as are submitted to its determination under this title." See also N.J.S.A. 3B:2-4 (permitting proceedings in the Superior Court to proceed by order to show cause).

Further, to "prove the transfer of any property or to nominate an executor, a will must be admitted to probate." N.J.S.A. 3B:3-18. During probate, the Superior Court "may take depositions to wills[,] admit the same to probate, and

17

grant . . . letters testamentary or letters of administration with the will annexed." N.J.S.A. 3B:3-17.

Other sections of the Probate Code similarly empower the courts. For example: "a court of competent jurisdiction shall appoint a trustee" under certain circumstances, N.J.S.A. 3B:11-4.1(c)(2); a court may remove a fiduciary from office if the court finds sufficient cause to do so, N.J.S.A. 3B:14-18; "[a] personal representative may settle his [or her] account or be required to settle his [or her] account in the Superior Court," N.J.S.A. 3B:17-2; "[a] guardian or trustee shall settle his [or her] account in the Superior Court at intervals as the court may require," N.J.S.A. 3B:17-3; "the Superior Court may order each co[-]fiduciary to account for all assets" and "to give bond," N.J.S.A. 3B:17-4; and if exceptions to the fiduciary's accounting are filed, "the court or any party interested therein may examine the accountant, on oath, concerning the truth and fairness of the account," N.J.S.A. 3B:17-6.

We see no basis to stray from our observation in our prior opinion and now expressly hold "arbitration clauses that eliminate the courts' expected role in resolving will disputes are inconsistent with the detailed statutory scheme vesting the superior courts with the authority to adjudicate such issues." See Hekemian, slip op. at 32. Notwithstanding our State's longstanding public

18

policy favoring arbitration, see Cohen, 231 N.J. Super. at 100-01, we are persuaded arbitration of disputes relating to the administration of a decedent's estate may not proceed in an arbitral forum even though the testator may have intended otherwise. We conclude enforcement of an arbitration clause in a testamentary instrument is contrary to the court's role underlying the Probate Code and inconsistent with our State's contract principles. See N.J.S.A. 2A:23B-6(a) (recognizing "[a]n agreement to arbitrate contained in a record" may be revoked "upon a ground that exists at law or equity for the revocation of a contract").

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division